59   133
83   122

---

WILLIAM B. GRIMES v. MARY L. WATKINS ET AL.

(Case No. 880.)

1. CONTINUANCE.— Where, more than two years after an itemized account was set up by defendant and sworn to, the plaintiff filed his affidavit denying its correctness, and this upon the eve of announcing ready for trial, a continuance of the cause on defendant's application, to procure testimony rendered necessary by the plaintiff's affidavit, should have been granted.

2. EVIDENCE.— One who has neither knowledge or recollection of a fact about which he is called to testify is not a competent witness.

3. CONTRACT, CONSTRUCTION OF.— A written instrument signed by the maker authorized another in terms to "kill all the cattle of certain ages in designated brands," for which he was "to pay for same $3 per head, collecting them at his own expense." It also authorized him to take the beeves in certain other brands at a price mentioned per head. Held,

(1) That a charge which instructed the jury that the instrument was not to be regarded as a bill of sale of the brands therein mentioned, but merely as a power

given to kill out of certain stocks certain classes of cattle, was correct only as to those stocks out of which the party was to take only the beeves.

(2) The meaning of the instrument being doubtful from an inspection of the language used, it should have been left to the jury to determine whether or not a sale was intended.

4. ESTOPPEL.— A prisoner convicted of murder sent a paper, signed by himself, to his two minor sisters, which affected injuriously their interest in property, with a request that they sign it, which they did without inspecting it, and on which the brother obtained $1,000 from the person who presented it to the sisters, and who knew of their minority at the time. In an action by the sisters to recover the value of the property converted, *held*, that they were not estopped by their signatures from asserting their right to the property.

5. MEASURE OF DAMAGES.— The measure of damages for a wrongful conversion of personal property is its value at the time of its conversion, with legal interest.

6. LIMITATION.— When the statute of limitations begins to run against one who, before its bar is complete, dies, leaving minor heirs, it is only suspended for twelve months after his death (unless administration is begun before that time), and continues to run against his heirs, who are not protected by minority from its operation.

APPEAL from Matagorda. Tried below before the Hon. Wm. H. Burkhart.

Suit instituted January 12, 1874, by Mary L. Lunn, now Mary L. Watkins, and her sister, M. E. Lunn, now M. E. Hertz, the appellees. They alleged that their mother, Sarah M. Lunn, died in 1864, their father, Josiah Lunn, in 1868, and their brother, Edwin Lunn, June 20, 1867; that their parents and their deceased brother owned certain stocks of cattle described by their respective brands, giving the number of each stock; that there had been no administration on the estates of any of said decedents and no necessity for any administration; that plaintiffs and one W. W. Lunn, their brother, were the only heirs of decedents; that in the spring of 1871, the defendant, under color of title from their said brother, W. W. Lunn, wrongfully converted to his own use all of the cattle, including all the interest of plaintiffs therein, claiming damages therefor at the sum of $5 per head for the alleged number of the original stocks, and for the increase thereof at the rate of twenty per cent. per annum — stating their damages on the 6th of October, 1874, at $21,290, with twenty per cent. per annum thereon for the increase from that date until the trial.

On the 6th of October, 1874, the defendant answered by general demurrer, and numerous special demurrers, and to the merits pleaded a general denial and that plaintiffs' suit was barred; that if Edwin Lunn ever owned any cattle he owned them in partnership with W. W. Lunn, and that W. W. Lunn had good right, as surviving partner, to sell them, and did, while in possession and full control, sell

the same to defendant and received pay from defendant therefor; that Edwin Lunn died June 20, 1870, and not in 1867; that after the death of plaintiffs' parents, plaintiffs became members of the family of W. W. Lunn, and were maintained and educated by him for a period of more than five years, at an annual charge of at least $300 each, and that if W. W. Lunn ever sold defendant any cattle in which the plaintiffs had an interest, the plaintiffs received from W. W. Lunn in necessary supplies, etc., value many times greater than the value of such interest, and that it would be unconscionable to permit plaintiffs to recover therefor in this suit.

That defendant furnished plaintiffs from February, 1870, to October, 1872, necessaries for their support to the amount of $155.75, which were paid for by W. W. Lunn, and that plaintiffs themselves made an account with defendant for necessaries to the amount of $301.23, and the same was paid by their order by W. W. Lunn out of proceeds of cattle sold defendant by W. W. Lunn, as shown by account, and a balance over of $50.27 was by W. W. Lunn's order placed to credit of plaintiffs and tendered them by defendant, and was again tendered.

That in the month of June, 1872, W. W. Lunn, to settle said account for necessaries, and, as the result of a family arrangement, settling all matters between plaintiffs and himself in reference to the cattle, joined by the plaintiffs, addressed a letter or order to defendant, whereby they requested defendant to credit plaintiffs with the cattle in certain brands, and to credit W. W. Lunn with the cattle in certain brands. That at that time defendant held for cattle purchased of W. W. Lunn, as plaintiffs then well knew, the sum of about $1,000, and, acting in good faith on that order, he paid out to W. W. Lunn that sum, before he had any intimation from plaintiffs, or any one, that plaintiffs would repudiate their acts in giving that order, and that he was thus led to place himself in a position in which great wrong and injustice would be done him, if they were now permitted to disavow said acts.   .   .   .

That W. W. Lunn was in possession of all the cattle for more than five years before the sale; that he sold certain cattle to defendant, evidenced by instrument in writing, copy of which was attached, and under which instrument defendant received all the cattle he ever handled in which the plaintiffs claimed an interest. That W. W. Lunn had the charge of herding, branding and managing the stock, and that if plaintiffs had any interest therein, they should account with W. W. Lunn for their just proportion of the charges, and that for this and other reasons alleged W. W. Lunn should be a party to

the suit, so that whatever rights he had against the plaintiffs might be allowed the defendant.

That if plaintiffs, as heirs of their parents and brother Edwin, had any interest in said cattle, the cattle in which they had such interest was only part of the estate of decedents; that there was certain real property belonging to the estates, and that W. W. Lunn had been the head of the family in looking after all their interests, and paid taxes and incurred other charges for the benefit of the property, and had sold no more thereof to defendant than would reimburse him and satisfy his, said W. W. Lunn's, interest therein, and that plaintiffs should be required to exhaust said interest of W. W. Lunn in all the property of the estate before being permitted to recover of defendant anything.

Defendant moved the court to make W. W. Lunn a party.

The plaintiffs, by way of reply, alleged that they were minors up to the institution of the suit; that W. W. Lunn was insolvent, and that he had no interest in the property, for the value of which defendant was sued, "having sold his interest therein to defendant long before this suit was brought;" setting up the statute of limitations against the claim for maintenance and education, and by sworn plea controverting the sworn account of defendant for necessaries alleged to have been furnished by him, and charging that, if any such were ever furnished by defendant, the same were furnished on the credit of W. W. Lunn.

At the May term, 1877, the defendant's application for continuance being overruled, there was a trial, verdict and judgment for plaintiffs.

The letter which was pleaded as an estoppel was as follows:

"MATAGORDA, June 6, 1872.

"MR. W. B. GRIMES: *Dear Sir* — Please place to the credit of Mary Lunn and Martha E. Lunn all cattle (in the brands given) received by you since the 20th day of April, 1872; and all cattle received by you prior to said April 20, 1872, please place to the credit of W. W. Lunn, and oblige

(Signed)                                "W. W. LUNN,
                                        "M. L. & M. E. LUNN."

Grimes stated in his testimony that Lunn, who was in prison (he had been convicted of murder), sent for him and requested that this arrangement be made, and that he had agreed upon it with his sisters. The instrument was then written, and signed by Lunn, who directed Grimes to present it to his, Lunn's, sisters, who understood the matter and would sign it. As Grimes went home he met the

ladies and read the paper to them, stating that their brother wished them to sign it, and they did so. He at that time had in his hands nearly $1,000, which upon the faith of this paper he paid over to Lunn, and which he would not have paid had the paper not been given.

Mrs. Hawkins stated that when the paper was presented and read to them, they signed it without examining it, supposing it was something for their brother's benefit, and without knowing that it affected their property. Grimes knew that they were minors.

*A. P. McCormick*, for appellant, on continuance, cited Pasch. Dig., 3742. On evidence, Greenleaf on Evidence, 436, 440. On charge of court, 46 Tex., 406; 34 Tex., 564; 9 Tex., 71.

*A. B. Peticolas*, for appellees, cited, on continuance, Green *v.* Crow, 17 Tex., 180; Lewis *v.* Williams, 15 Tex., 47. On charge of court, Fulton *v.* Thompson, 18 Tex., 287; 21 Ala., 437; 1 E., L. & E., 506; Shepherd *v.* White, 11 Tex., 858; Berry *v.* Harnage, 39 Tex., 649.

DELANY, J. COM. APP.— There are nine assignments of error, but it will not be necessary to discuss them all.

The first calls in question the refusal of the court to make W. W. Lunn a party. The merits of the case, we think, might be determined without the joinder of Lunn, and there was, therefore, no error in the ruling of the court.

The second assignment is to the ruling of the court which rejected defendant's application for a continuance. It was a third application, the cause having been continued once by the plaintiffs and several times by consent. The application was made upon two grounds, only one of which will be considered.

On the 6th of October, 1874, the defendant had filed an amended answer in which he set up an itemized account against the plaintiffs. This account was sworn to by defendant under the act of April 2, 1874. Acts of 1874, pp. 52–3; R. S., art. 2266. Just before the trial at the May term, 1877, the plaintiffs filed an affidavit in which they disputed a part of this account, thus imposing upon the defendant the burden of proof. To procure the necessary testimony the defendant applied for a continuance, which was refused. In this, we think, the court erred.

It is held that the filing of an amendment which operates as a surprise to the opposite party is a sufficient cause for a continuance,

provided it renders necessary the production of evidence which would not have been required if the amendment had not been filed. Pasch. Dig., 54; Fisk v. Miller, 13 Tex., 224. Here there was not, indeed, an amendment, but there was an affidavit which had the same effect, and, in our opinion, the same rule should be applied to both cases.

In view of another trial it will be proper to notice the third assignment, which relates to the testimony of the witness Pierce. The trial took place in May, 1877. The witness was called to testify as to the number of cattle which ran in certain brands in 1870 and 1871. He declared that he had neither knowledge nor recollection on the subject. He had not been on the range for a number of years, and could do nothing more than guess at the number of the cattle.

His testimony should not have been admitted. A witness should speak from his knowledge or recollection. And if, after refreshing his memory by all legitimate means, he still has no recollection upon the subject, he is not a competent witness. 1 Greenl. Ev., 436, 440. This case is not like that of Albright v. Corley, 40 Tex., 106. In that case the witnesses had some means of information; here the witness had none.

The fifth and sixth assignments may be considered together.

The fifth assignment is as follows: " The court erred in his general charge in the matter relating to the disposition or sale by W. W. Lunn of the partnership property (cattle) of said W. W. Lunn and Edwin Lunn." And appellant presents this proposition: " If W. W. Lunn, one of the partners, contracted to sell the partnership cattle before dissolution by the death of the other partner, he had the right as survivor, in good faith, to complete said contract by delivery of the cattle and receipt of the price after said dissolution."

This supposed sale is evidenced by the following instrument:

" May 17, 1870.

" W. B. Grimes is hereby authorized to collect and kill all the cattle (in certain brands mentioned), taking a fair proportion of calves, yearlings, two-year-olds, three-year-olds, cows, four-year-olds and upwards, in payment for which said Grimes is to pay for same $3 per head, collecting them at his own expense."

The instrument also authorized Grimes to take the beeves in certain other brands at a certain price per head. It was signed by W. W. Lunn and by Grimes.

The court charged the jury, at the request of the plaintiffs, that this instrument was not to be regarded by them as a bill of sale of the

brands therein mentioned, but merely as a power given to Grimes to kill out of certain stocks certain classes of cattle.

This charge was correct as to those stocks out of which Grimes was to take only the beeves; but as to the stocks mentioned in the first part of the instrument we incline to the opinion that it was erroneous. The witnesses speak of the transaction as a sale, and one of them says that the sale was notorious. The parties themselves seem to have treated it as a sale. The meaning of the instrument upon its face is doubtful; and we think the question should have been left to the jury to determine whether or not the transaction was a sale. Masterson v. Goodlett, 46 Tex., 402; Ferguson v. Ferguson, 27 Tex., 340.

If we are correct in this view of the case, then that portion of the general charge pointed out in the fifth assignment of error is erroneous. One of the stocks mentioned in the first part of the contract was owned jointly by W. W. Lunn and his brother Edwin. Concerning this the court charged as follows: " If, during the life-time of Edwin Lunn, and after he attained full age, W. W. Lunn did enter into a contract with Grimes in relation to the sale of partnership cattle of himself and the said Edwin, . . . then what was done under said contract, to the death of Edwin, is to be taken as the act of said Edwin; . . . but when he died the authority of his partner to continue to sell under said contract ceased." The contract was executed on the 17th of May. Edwin died on the 20th of June following. The charge assumes that W. W. Lunn continued to sell after the death of Edwin. This was incorrect. If there was a sale at all, it was consummated when the instrument was executed. Lunn was not to deliver the cattle. There was nothing left for him to do but to receive the money as Grimes collected the cattle.

The seventh assignment relates to certain charges which were asked by the defendant and refused. The first and seventh of these charges were to the effect that, if the letter signed by W. W. Lunn and the plaintiffs was executed in good faith, and was for the advantage of the plaintiffs, and defendant was thereby induced to act, so that the disavowal now would be to his prejudice, and place him in a worse position than he would otherwise occupy, and if the plaintiffs were at that time of years of discretion, they cannot now avoid it, but are estopped thereby.

Our opinion is that the plaintiffs should not be held to be estopped by this letter. There is no evidence of fraud or concealment on their part. It is clear also that they did not fully understand

the effect that their act might have upon their own interests. They supposed that they were signing the paper for their brother's benefit, and their distress and anxiety about him must have rendered them incapable of deliberate action. It is, however, but justice to the defendant to say that there is nothing in the record to show any attempt on his part to take advantage of the plaintiffs.

The second of the refused charges was in effect that if the defendant purchased the cattle in good faith, then he was liable to the plaintiffs, if at all, only for the value at the time of the purchase, with interest at eight per cent.

The court, in the general charge, had given as the measure of damages the highest market price of the cattle at any time between the date of the purchase or conversion and the date of the trial. This, we think, was error. The measure of damages in this case is the value of the property at the date of the appropriation with legal interest. Masterson v. Goodlett, 46 Tex., 402; Hillebrant v. Brewer et al., 6 Tex., 45.

The defendant also asked instructions upon his plea of limitations, that if W. W. Lunn sold to the defendant the cattle of the Lunn brothers while they were living and after they attained their majority, then the action of the plaintiffs was barred as to the interests of those two brothers. It is clear that if such a sale was made, a cause of action at once accrued to the two brothers, and the statute commenced to run against them. And having commenced to run in their life-time, it would not cease upon their death, except for twelve months, under the statute, unless administration was commenced before that time. Pasch. Dig., 4607; R. S., 3217.

In this case the minority of the plaintiffs would not protect them.

We find no other errors in the record; but for those heretofore pointed out, our opinion is that the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion approved March 19, 1883.]