Keating Implement & Machine Co. v. Terre Haute Carriage & Buggy Co.

No. 1947.

1. Fraudulent Conveyance—Surety.

That a failing debtor can protect his surety by a transfer of goods reasonably proportioned in value to the amount of the debt, is settled in this State.

2. Pleading—Fraud.

Where the general ownership and possession of personalty has passed to the vendee, a third person who is sued for its conversion cannot, under the general denial only, attack the conveyance for fraud, special pleading being requisite in such case.

3. Agent's Authority—Construction—Charge of Court.

C., a failing debtor, telegraphed to a creditor, "I am in trouble.   Appoint   T. agent to take goods out of our hands.   Act quick."   Upon receipt of this message the creditor wired T., "Get all vehicles our make out of hands of C."   The notes of the debtor given for the vehicles in question were then outstanding, but had been deposited by the creditor with a bank as collateral security.   Held, that T. was authorized to credit the value of the vehicles so taken on the notes, and the court should have so instructed the jury.

4. Same—Ratification After Attachment.

Where an agent, without authority so to do, purchases goods from a debtor in satisfaction of a debt due the principal, a ratification of his action comes too late after other creditors have levied attachments on the property.

APPEAL from Tarrant.   Tried below before Hon. S. P. GREENE.

*T. L. Nugent* and *John W. Wray,* for appellant.—1.   Where an agent's authority is conferred by a written instrument, it is the duty of the court to construe the instrument to the jury, and to define to it the nature and extent of the authority conferred.   Reese v. Medlock, 27 Texas, 120.

2.   Tackaberry's agency was created by appellee for a specific purpose, to-wit: to get possession of the vehicles of its manufacture from its debtor.   The direction was specific, the powers were clearly defined, circumscribed and limited by the language creating them, and he had no power to bind his principal by any act beyond the authority so conferred and defined.   Nixon v. Hyserott, 5 Johns., 58; Andrews v. Kneeland, 6 Cowan, 355; Batty v. Caswell, 2 Johns., 48; Williams v. Bierbeck, Hoff. Chy., (N. Y.) 364; Mechem on Agency, secs. 288, 409; Savings Funds Society v. Bank, 78 Am. Dec., 390.

3.   Appellee could only be bound by the unauthorized act of Tackaberry by the doctrine of relation and ratification, and the appellant having acquired a valid lien on the property by writ of attachment before the appellee was informed of said unauthorized act of its agent, it could not by subsequent ratification become a party to the original transaction in such a manner as to defeat appellant of the advantage of its levy.   Taylor v. Robinson, 14 Cal., 396; Wood v. McCain, 7 Ala., 800; Cook v. Tullis, 18 Wall., 332.

*Humphreys & McLean,* for appellee.—1.   The telegram from appellee to Tackaberry conferred on the latter a special agency to get all the vehicles manufactured by appellee out of the hands of Culbertson, Wright & Co.   This delegation of authority not being limited by the instrument conferring it, as to the means by which the agent was to get the vehicles, carried with it as an incident the power to do all things which were necessary, proper and reasonable to be done in order to effectuate the purpose for which the agency was created.   And whatever was done by Tackaberry in the accomplishment of the expressed object of his appointment (getting the vehicles for his principal), which was fairly and legitimately within the implied powers of the agency, and warranted by the facts, was binding on appellee without subsequent ratification. Mech. on Agency, secs. 311, 312.

2.   Tackaberry, in buying the vehicles and allowing Culbertson, Wright & Co. a credit on their indebtedness, did the only things that could reasonably have been inferred from the language of the telegram creating the agency.   His acts in this respect were strictly within the power conferred, and in no other legitimate way could he have executed his agency.

3.   It was not the duty of the court to construe the telegram appointing Tackaberry agent.   When the effect of the writing does not depend entirely upon the construction or meaning of its terms, but upon extrinsic facts and circumstances, then it becomes the duty of the court to

submit for the consideration of the jury the instrument, together with the attending facts and circumstances, with such instructions upon the legal effect of the instrument as would meet the various phases presented by the extrinsic evidence.  Taylor v. McNutt, 58 Texas, 71.

HEAD, ASSOCIATE JUSTICE.—Appellant and appellee were both creditors of Culbertson, Wright & Co., who conducted in Fort Worth a general wholesale and retail business in carriages, wagons, etc.  That firm became financially embarrassed, and one of the members, on October 23, 1892, telegraphed to appellee as follows: "I am in trouble.  Appoint W. J. Tackaberry agent to take goods out of our hands.  Act quick." In response, appellee on the next day telegraphed Tackaberry: "Get all vehicles our make out of hands Culbertson, Wright & Co.  Wire numbers."

At the time of this correspondence, the notes of Culbertson, Wright & Co., given for the vehicles referred to, with others, were then outstanding, but had been deposited by appellee with the Vigo County National Bank as collateral security in the ordinary course of business.  Tackaberry, in pursuance of the power thus conferred, received from Culbertson, Wright & Co. the vehicles referred to, and executed to them a receipt specifying that the value thereof at invoice price, which amounted to $1395, was to be credited upon said outstanding notes, which amounted to $1525, besides interest.  The goods were then replaced by Tackaberry, without other authority, in the hands of Culbertson, Wright & Co., to be sold for appellee upon commission.

Thereafter, upon October 29, 1892, appellant sued Culbertson, Wright & Co., and attached said vehicles as their property.  Appellee subsequently instituted this suit to recover of appellant and the sheriff damages for the conversion of the goods so taken, alleging in general terms that "it was the owner and had possession" thereof.  Appellant answered by general denial, and specifically, "that the pretended title of plaintiff, under which they claim title to the alleged property, is fraudulent and void; that plaintiff acquired same from Culbertson, Wright & Co., who at the time were insolvent, in settlement, or part settlement, of a past indebtedness; that the amount of property so acquired was greatly in excess of said indebtedness; that Culbertson, Wright & Co. sold same to plaintiff with intent to hinder, delay and defraud their creditors and particularly this defendant," etc.

Upon the trial appellant does not seem to have seriously attempted to show the transaction to have been fraudulent upon any of the grounds alleged in its special answer, but relied upon want of authority in Tackaberry to receive the goods for appellee upon the terms agreed upon between him and Culbertson, Wright & Co.  That this latter firm, in its trade with Tackaberry, intended to transfer the title to these goods to appellee, and to make them henceforth its property, there is no question.

That a failing debtor can protect his surety by a transfer of goods in value reasonably proportioned to the amount of the debt, has been de-

cided in this State upon full consideration. Frees & Son v. Baker, 81 Texas, 216. It does not appear from the record whether or not Culbertson, Wright & Co., at the time of this transaction, had notice that appellee had transferred their notes to the Vigo County Bank to hold as collateral security; but, conceding that they did not, and that for this reason they could have cancelled the trade and recovered the goods at the time of the levy of appellant's attachment, can appellant do so, especially with no pleading except the general denial? Without deciding that appellant could even by special pleading set aside this transfer upon the ground here stated, Culbertson, Wright & Co. remaining satisfied therewith after they acquired full knowledge, or even that Culbertson, Wright & Co. could themselves have set it aside upon that ground alone, we have concluded that this could not be done without special pleading. Where the general ownership and possession has passed to the vendee by the terms of the trade, and the vendor seeks to rescind upon the ground of fraud, accident or mistake, special pleading is generally, if not always, required. Much more should it be required of a third party who attacks the conveyance upon the ground that his rights have been invaded. See Willis v. Hudson, 63 Texas, 678; Hoffman v. Building Association, 2 Texas Civ. App., 690. It seems to us that want of knowledge on the part of Culbertson, Wright & Co. of the transfer of these notes as collateral by appellee could only be given the effect of a fraud practiced upon them by which they were induced to part with their property.

That appellee intended Tackaberry to give credit on these notes for the value of the goods he might receive from the makers thereof, we think is manifest from the telegrams themselves, when interpreted in the light of the surrounding circumstances, and the court should have so instructed the jury. In Mechem on Agency, secs. 294-8, it is said:

"The construction or interpretation of writings is for the court. Hence, where the authority is created by a written instrument, the writing must, in general, be produced, and the nature and extent of the authority thereby conferred must be determined by the court.

"As has been seen, agency is, in general, the creature of intention. Courts sit, not to make contracts between parties, but to construe and enforce the contracts which the parties have themselves made. Hence the first and most important rule in the construction of writings creating an authority, is to ascertain what authority the parties intended to create.

"The intention of the parties is primarily to be determined from the language used by them. And, as a mistake of law does not constitute a valid objection, parties cannot be heard to complain that they did not contemplate the legal effect of the language which they have deliberately chosen.

"In this, as in other cases, the intention is to be gathered from the whole instrument, whether it be made up of one piece of paper or of many.

"And so, in doubtful cases, resort must be had to the situation, sur-

roundings and relations of the parties; for, though the writing cannot, in general, be contradicted by oral evidence, yet the circumstances may properly be used as aids, and, by putting the court more or less fully into the exact situation of the parties, to enable it to see the subject matter as they saw it."

Also, section 311: "Every delegation of authority, whether it be general or special, express or implied, unless its extent be otherwise expressly limited by some instrument conferring it, carries with it, as an incident, the power to do all those things which are necessary, proper, usual and reasonable to be done in order to effectuate the purpose for which it was created. It embraces all the appropriate means to accomplish the desired end. This principle is founded on the manifest intention of the party creating such authority, and is in furtherance of such intention."

If we are correct in the conclusion that the court should have instructed the jury that appellee intended to authorize Tackaberry to give credit upon these notes, it follows from what we have said that the mere fact that it had previously given a lien upon them to another would not render its title to the goods thus acquired so entirely nugatory as to enable a third party, when sued for a conversion, to defeat a recovery by pleading the general denial alone. The appellee, however, did not object to the evidence, nor the charges given the jury, upon the grounds above indicated, and it perhaps would not be proper for us to rest our decision entirely thereon.

The court submitted the extent of Tackaberry's authority to the jury, and, among other things, instructed them, "If you further believe that said Tackaberry had the authority from plaintiff to make such contract with said Culbertson, Wright & Co. prior to making the same, or if he did not then have such authority, that afterwards and before the institution of this suit, plaintiff, hearing of said contract, ratified the action of said Tackaberry in making said contract (and it is altogether immaterial whether such ratification was before or after said seizure of said property), then you will find that said sale was consummated."

If we are correct in the conclusion that the court should have instructed the jury that the telegram sent by appellee authorized Tackaberry to obtain the goods for it upon the terms he did, it is manifest appellant could not have been injured by this charge. If, however, the extent of his authority was so doubtful as to require its submission to the jury, the giving of this instruction should require a reversal of the judgment. In that case, we would be unable to say whether the jury found in favor of appellee upon the ground of original authority or subsequent ratification, and we are not prepared to hold that ratification after the levy of appellant's attachment would deprive it of the benefits thereof. We must bear in mind that appellant occupied the position of a creditor to a failing debtor, and it could not be expected to refrain from making a levy for an indefinite time to wait for a ratification by another creditor of a wholly unauthorized act done in its behalf. Kittrell v. Blum, 77 Texas, 336.

We attach but little importance to the fact that Tackaberry was not authorized to replace the goods with Culbertson, Wright & Co. to sell upon commission. That was a separate transaction, and, if invalid, would not affect the validity of the other.

· We find the goods turned over to Tackaberry for appellee were clearly separated and identified from others of like kind before appellant's levy.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered October 5, 1895.