Perry G. GATHRIGHT et al., Appellants,

v.

George RUSSELL, Appellee.

No. 46.

Court of Civil Appeals of Texas.

Tyler.

Oct. 22, 1964.

John H. Holloway, Houston, for appellants.

John K. Meyer, Hinds & Meyer, Houston, for appellee.

MOORE, Justice.

The opinion heretofore rendered on July 23, 1964, is withdrawn and the following is substituted therefor.

This is a suit for conversion of a shrimp boat brought by Appellee, George Russell, against Appellants, W. L. Keeling and Perry G. Gathright. Appellee Russell originally purchased the boat from Dr. Phillips, paying therefor the sum of $750.00 in cash, and executing his note and chattel mortgage for the remaining balance in the amount of $780.00, payable in monthly installments of $65.00 each. Thereafter, on May 15, 1961, Dr. Phillips assigned the note and chattel mortgage to Appellant Gathright. A nonsuit having been taken as to Dr. Phillips, the cause of action proceeded against Appellants Gathright and Keeling.

Appellants' pleadings consisted of a General Denial only. In view of this pleading Appellee, prior to trial, made a Motion In Limine requesting the Court to refuse to allow Appellants to introduce any evidence of a chattel mortgage. The Court announced that he would make no ruling on the Motion, but that he would take the Motion along with the case with the understanding that Appellee would not be considered to have waived his objection to any evidence of a chattel mortgage by reason of his failure to object to such testimony each time it was offered.

Following a jury trial, judgment was rendered for the Appellee Russell for the sum of $1,000.00 actual damages and for $1.00 against each of the Appellants, Gathright and Keeling, as exemplary damages.

The Statement of Facts reveals that immediately after Appellee Russell purchased the boat, he stored same at Muecke's Boat Dock at Seabrook, Texas, where, according to his testimony, he made extensive repairs. Thereafter, on May 15, 1961, Appellants Gathright and Keeling purchased the note and chattel mortgage from Dr. Phillips for the sum of $700.00 in cash, which was paid by Keeling. The assignment of the note and mortgage, however, was made to Gathright. Shortly thereafter, during the latter part of May or the first part of June, Gathright and Keeling, without notifying Russell, went to Muecke's Boat Dock, took possession of the boat and towed it to Anchor Boat Works in Houston, a distance of some 20 miles.

According to Appellee Russell, after finding his boat to be missing from the dock, he made a search for the same but never learned of its whereabouts until around the 10th day of August, 1961, at which time he learned that it was at the Anchor Boat Works in Houston, where he immediately went and found both the Appellants to be working on the boat. He testified that he advised them he had come to take his boat, but that Appellants told him if he did so he would wind up in the cemetery; that he was unable to get possession of the boat, but within a few days he found the boat had been returned to Muecke's Boat Dock, but Mr. Muecke would not allow him to go aboard the boat until the controversy was settled. According to his testimony, neither

of the Appellants ever offered to return the boat to him and therefore he had never accepted the boat back before it was destroyed by Hurricane Carla on September 11, 1961.

Appellee admits that he had paid only one monthly installment, but contends that the reason he failed to pay the installments was because Dr. Phillips was too busy to deliver certain other equipment in accordance with their agreement, and in view of this fact, he finally settled the matter with Dr. Phillips by paying him $190.00 in satisfaction of the note and mortgage.

Appellants admit they took the boat, but only because Appellee was several months in arrears on his monthly payments. They testified that in view of this, they felt that they had a right under the mortgage to not only repossess the boat, but also to keep the same because of the non-payment of the note. They admit they never attempted to post notices or sell the same at the Courthouse door in accordance with the provisions in the mortgage. Appellant Keeling admits that he returned the boat to Muecke's Dock and paid the storage thereon for one month in advance, at which time he told Mr. Muecke about the dispute and admitted that he could have "possibly" told Mr. Muecke not to allow Russell to go aboard the boat. He admits that after he returned the boat to Muecke's Dock, he went aboard approximately once a week for the purpose of putting on a set of nets and also for the purpose of starting the engines and pumping the bilges and that he continued to do this until the boat was finally destroyed by the hurricane. He admitted that after the boat sank, he attempted to raise the boat, and being unable to do so, removed all parts that he was able to salvage.

The mortgage in question contained the following essential provisions:

"The Mortgagor hereby expressly agrees and covenants that on default of payment of principal or interest, or any sale, or any attempt to sell said goods or chattels, or any part of them, or to remove them, or any part of them from the county, or from their present location, or upon any seizure of any part of them, by any process of law, or if any holder of said note shall at any time feel unsafe or insecure from any cause, then, and in any of the foregoing events, said Mortgagee or assigns, agents or representatives is hereby authorized at his option to declare all of said note due and to take actual possession of said property, and to sell same at public auction, for cash, at the Court House door in Harris County, Texas, with or without having possession of said property present at said sale, after having given notice of the time, place and terms of said sale, as the law now requires for sale of personal property under execution. And the proceeds arising from such sale shall be applied—first, to necessary and proper expense of such sale; then to the payment of said note then remaining unpaid, the balance, if any, to be paid to said Mortgagor or order."

The jury in response to the Special Issues submitted by the Court, found both of the Appellants guilty of conversion, which was a proximate cause of the loss; that the boat had a reasonable cash market value of $1,000.00 at the time it was removed from the dock; that the highest reasonable cash market value of the boat between the time of the taking and the time of the destruction was $1,000.00; that each of the Appellants were actuated by malice in the taking of the boat and that Appellee should recover the sum of $1.00 from each of the Appellants as exemplary damages; that neither of the Appellants took the boat under the reasonable belief that they were exercising the right of possession accorded them by the terms of the note and chattel mortgage. The jury further found that Appellee Russell did not pay Dr. Ross Phillips the sum of $190.00 in full settlement and discharge of the lien and chattel mortgage.

Appellants assail the judgment by the assignment of 19 Points of Error wherein they contend that the Trial Court was in er-

ror in failing to grant their Motion for Instructed Verdict and Motion for Judgment Notwithstanding the Verdict because there was no evidence to support the jury's findings upon which the judgment is based, and because the judgment is against the great weight and preponderance of the evidence. Appellants further contend that the judgment is erroneous as a matter of law in that Appellee was allowed to recover for the cash market value of the boat rather than being restricted to a recovery of his equity of redemption in the mortgaged property.

The following excerpts taken from the cause of Lyon v. Wood (Tex.Civ.App.), 363 S.W.2d 179, adequately demonstrate why we are unable to agree with Appellants' contention:

" * * * By taking such position appellant postulates the performance of all conditions precedent contained in the mortgage contract so as to effectively accomplish a non-judicial foreclosure of the mortgage lien. However, while it is true appellant took possession of the mortgaged property peacefully, it is equally true that he did not do that which was also required of him in the mortgage contract, namely, sell the property and account for the proceeds. The taking alone is not sufficient to amount to a non-judicial foreclosure. The taking must be followed by the sale in accordance with the terms of the mortgage. The repossession of the property covered by the mortgage does not change the status of the parties as mortgagor and mortgagee. By taking possession of the property the seller protects his security. The seller is still the holder of the mortgage and his interest in the automobile is not increased. His repossession of the property gives him a right to go further and sell the same, applying the proceeds to the principal due, plus any charges or expenses incurred in repossession. The status of the parties does not change until the purchaser satisfies the debt at a public or private sale of the property involved.

"After repossession and prior to sale appellant assumed the added responsibility of a trustee of the property for the appellees' interest therein. * * *

"Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 7–A, Ch. 111, § 4727, pp. 72–73 announces the rule:

" 'This right of the mortgagee is subject, however, to the equity of redemption in the automobile, and if the mortgagee takes possession of the automobile under the chattel mortgage after default, he must either sell it according to the terms of the chattel mortgage or become liable to the chattel mortgagor for the value of the car to be applied on the indebtedness secured by the chattel mortgage. Exercise of dominion over a repossessed vehicle prior to purchase thereof in foreclosure proceedings is a conversion, * * *.'

"In the case of John E. Morriss [Co.] v. O'Neal, Tex.Civ.App., 109 S.W.2d 1156 the court said:

" 'It is well settled that a mortgagee may avail himself of the terms and provisions of a mortgage instrument, without being liable for a conversion. (Citing cases). In seizing and selling chattels under a power of sale, however, the mortgagee must not extend the authority given. In a sense he is the trustee for the mortgagor, and his duties are those of a trustee. As well stated in Block Motor Co. v. Melia, et al., (Tex. Civ.App.), 247 S.W. 666, "He cannot claim the property as his own and sell it for his own benefit, and then defend under the power of sale given in the mortgage. If he deals with the property as his own and sells it as his own, he is guilty of a conversion." '

"That a conversion may consist of the wrongful detention of chattels under an assertion of right inconsistent with the owner's general dominion is supported in Alexander Trust Estate, et

al., v. Lindsey Drug Co., Tex.Civ.App., 214 S.W.2d 475; Neyland v. Brammer, Tex.Civ.App., 73 S.W.2d 884; Crawford v. Thomason, 53 Tex.Civ.App. 561, 117 S.W. 181 and Parchman v. Parchman, Tex.Civ.App., 239 S.W.2d 902."

Nor was Appellee required to make a tender prior to bringing a suit for conversion. The general rule is that where the Defendant has committed some act which constitutes conversion, a tender by the Mortgagor of a debt due the Mortgagee is not a condition precedent to the bringing of the action for conversion. This is true where it is no longer within the power of the Mortgagee to perform his part of the agreement. City National Bank in Wichita Falls v. Kiel (Tex.Civ.App.), 348 S.W.2d 260, citing 53 Amer.Jur. 879, Sec. 87.

Appellants having admitted that they took the boat, intending to keep same in satisfaction of the balance due upon the note, and retaining dominion over the property until after its destruction, without ever having offered same for sale in accordance with the terms of the chattel mortgage, amounted to an illegal conversion of the property. There is ample evidence in the record to support the judgment based upon conversion, and the judgment is not deemed to be against the great weight and preponderance of the evidence.

Appellants next contend that the judgment should be reversed because the Court failed to apply the proper measure of damages in that the Court allowed Appellee to recover for the full value of the boat, contending that the Court should have permitted a recovery only for Appellee's equity of redemption, i. e. the difference between the cash market value of the boat and the amount owed by Appellee on the note and mortgage. Appellee counters this by contending that Appellants are not entitled to an offset because Appellants pleaded on a General Denial and did not plead the amount due as an offset.

The general rule in conversion cases is that the Plaintiff, who establishes his cause of action, is entitled to recover the value of the converted property at the time of the wrongful taking, together with the interest from that date. 17 Tex.Jur.2d 168, 169. However, in cases where a mortgagor seeks damages from the mortgagee for wrongful taking of the mortgaged property recovery is limited to the mortgagor's equity in the property, that is, to compensate for the loss sustained less the debt owed the mortgagee. 10 Tex.Jur.2d 75; Wakefield v. Queisser (Tex.Civ.App.), 293 S.W. 896; Commercial Credit Corporation v. Flores (Tex.Civ.App.), 345 S.W.2d 432.

Appellee does not specifically sue for a conversion of his equity of redemption, nor does he allege any special ownership or in any way mention a mortgage. On the contrary, his pleadings allege general ownership.

As pointed out before, Appellants proceeded to trial pleading only a General Denial to the allegation of conversion, without asserting their special interest in the property.

Under these circumstances, the question arises as to whether or not the Appellants should be allowed to prove their special interest in the property based upon a chattel mortgage. We think not. If they wished to show that, whilst the plaintiff was owner as to everyone else, he was not as to themselves, they should confess this general ownership and show in avoidance the circumstances under which they claim a special interest therein. Willis & Bro. v. Hudson, 63 Tex. 678; Keating Implement & Machine Co. v. Terre Haute Carriage & Buggy Co., 11 Tex.Civ.App. 216, 32 S.W. 556; Bassham v. Robertson (Tex.Civ.App.), 154 S.W. 1065; Rule 94, Texas Rules of Civil Procedure. The basic question of whether or not Appellants were then and there the owners of a valid outstanding chattel mortgage lien would require both pleading and proof of the validity thereof, as well as the amount due and owing thereon. With-

out such pleading, the assertion of a mortgage would not show special title in Appellants because they asserted no title in their pleadings, and any evidence introduced upon an issue not made by the pleadings is wholly irrelevant and is, in fact, no evidence. Keystone Pipe & Supply Co. v. Osborne (Tex. Civ.App.), 73 S.W.2d 120.

Under the provisions of Rule 47, Texas Rules of Civil Procedure, V.A.T.S., it is provided:

"A pleading which sets forth a claim for relief, whether an original petition, counterclaim, cross-claim, or third party claim, shall contain

"(a) a short statement of the cause of action sufficient to give fair notice of the claim involved, and

"(b) a demand for judgment for the relief to which the party deems himself entitled.

"Relief in the alternative or of several different types may be demanded."

Appellants did not plead a "short statement" as a basis for either a "counter claim" or a "cross-claim" or setoff. There is no statement sufficient to give fair notice of their claim of an interest in the property nor the amount thereof, nor did they seek any relief. It cannot be said that the issue was tried by consent because Appellee not only filed a Motion In Limine to exclude the question of a mortgage lien, but also repeatedly objected thereto, and was assured by the Court that issue would not be considered as having been tried by consent.

■ The Trial Court permitted the introduction of the mortgage and note into evidence, apparently upon the theory that it was admissible for the purpose of showing some justification for Appellants' actions in repossessing the boat and also to negating Appellee's allegation of malice in his claim for exemplary damages. Without pleadings, however, its admission in evidence affords Appellants no basis for affirmative relief. Shield Co. v. Cartwright, 142 Tex. 324, 177 S.W.2d 954, 957.

■ There being ample evidence in the record to support the jury's finding of the value of the boat at the time it was converted, and there being no pleading which would support a setoff or any other type of affirmative relief on behalf of the Appellants, the Trial Court did not err in failing to submit Appellee's requested issues on the subject, but properly based his judgment upon the verdict of the jury finding of the reasonable cash market value of the boat on the date of the conversion. Such finding is not considered to be against the overwhelming weight and preponderance of the evidence.

■ By other Points of Error, Appellants assert that the Trial Court erred in awarding exemplary damages because there was no evidence to support the verdict, and in the alternative that such finding is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. We think the facts set out hereinabove demonstrate that there was ample evidence in the record to support the jury's finding that the conversion was accompanied by malice. Appellants admit that they took the boat intending to then claim it as their own, and did not make any effort to foreclose under the terms of the chattel mortgage although the boat was in their possession for some three and one-half months prior to its destruction by the hurricane. Upon a review of the entire record, we find ourselves unable to agree with Appellants that the finding of the jury relating to exemplary damages is contrary to the great weight and preponderance of the evidence.

Appellants present numerous other Points of Error in their Brief; however, none of the remaining Points, nor any of the other Points for that matter, comply with Rule 418, T.R.C.P. in that none of the Points are shown to be germane to any assignments of error in the Motion for a New Trial or

the Motion Notwithstanding the Verdict. Despite the failure to follow the briefing rules, we have discussed what we consider to be the controlling Points, but defer a discussion of the remaining Points because they are not properly briefed. In our review of the record, however, each of the Points were considered and were thought to be without merit.

The judgment of the Trial Court is affirmed.