## SCHUTZ et al. v. MORRIS et ux.
### No. 9622.

Court of Civil Appeals of Texas. Austin.
March 26, 1947.

against appellants for both actual and exemplary damages occasioned by the conduct of appellants in removing, without legal authority and without their knowledge or consent, the personal property and effects of appellees from the room rented and occupied by them in the City of Austin.

We do not understand appellants to deny that they acted without legal authority; nor that they are liable for actual damages. The only contention here made in that regard is that the evidence will not support the amount—$140—found by the jury. Briefly stated the evidence, disregarding that of appellants, and considering only that in support of the verdict, shows:

In September, 1946, Rosa Lee Schutz owned a building at 2313-B Shoal Creek Boulevard, in Austin, Texas, the downstairs portion of which was rented as an apartment. She had rented an upstairs room to Fred Morris, a physics instructor at the University, who occupied same with his wife; and Rosa Lee occupied the remainder of the upstairs. In September, 1946, Chester Schutz, brother of Rosa Lee, and a real estate agent, sold said property to W. F. Stevenson of San Augustine, Texas. The deal was closed and title passed to said purchasers on September 27, 1946. Stevenson purchased said property for his married son, just out of military service, to live in while attending the University of Texas. Prior to September 27th, Fred Morris had made arrangements with the purchasers of the property to remain in said room until he could find another place to live. On the night of September 28th, the son and wife, without knowledge of Fred's prior arrangement with the senior Stevensons, arrived in Austin, found the personal effects of Fred and wife in their room, but Fred and wife were not in. He telephoned Chester Schutz about the matter. The latter together with Rosa Lee, the former owner, then came over to the premises, and in the absence of, and without the knowledge or consent of the Morrises, "cleaned out" their room by removing all of their possessions, including furniture, dishes, clothes, personal belongings, books, lecture notes, index cards, etc., according to appellees' testimony, by piling them all in a heap on the back porch. In

W. Wroe Owens, William Trenckmann and C. L. Krueger, all of Austin, for appellants.

Jerome Sneed, Jr. and Louis Scott Wilkerson, both of Austin, for appellees.

BAUGH, Justice.

Appeal is from a judgment, based upon a special issue verdict, in favor of appellees

doing so the pick-up arm on appellees' radio-phonograph was broken; their clothes and other furnishings were soiled; and the notes, papers, cards, etc., previously prepared, arranged and used by Fred in teaching, were so scattered and disarranged as to require long and tedious labor in getting them back in proper and usable order.

Fred testified that he had had special training in M. I. T. and in the Navy in technical work; that he had himself constructed the phonograph arm so that it had perfect balance; that it was completely broken; and that it would cost $25 to replace such arm with another of the same character. He further testified that all of their clothes, linens, etc., had to be cleaned, pressed and ironed because of appellants' conduct; that he was familiar with cleaning and pressing costs, not including the work of his wife in so doing; and that the cost of such services on all clothes soiled was between $30 and $40. He further testified that his physics notes had been accumulated by him over a long period of time; were taken from books, scientific journals, etc., dating as far back as 1927 or 1928, and consisted of notes, outlines, index cards, and other materials used by him in teaching courses at the University, all of which had been arranged by him in proper order for that purpose. That because of the confusion, disarrangement and jumbling together of such materials by appellants' conduct it would require at least ten days of his time to place same back in proper order; and that his time for that purpose was worth $10 per day.

██ Under such circumstances, the peculiar character of these elements of damage, and the experience and knowledge of the witness, we think he was qualified to give his opinion as to the value of the items involved. Consequently the testimony was sufficient to sustain the jury's findings.

The issues of exemplary damages were submitted to the jury separately as to each appellant. In response to such issues the jury found that each of said appellants "acted with malice towards plaintiffs"; and assessed $500 exemplary damages against Chester Schutz; and $250 against Rosa Lee Schutz. The trial court rendered judgment against them jointly for the $140 actual damages; and separately for the exemplary damages found. Malice was defined by the trial court as follows: "You are instructed that by the term 'malice', as used herein, is meant a state of mind that is reckless in its nature and implies a determination to do a thing regardless of legal rights. The intentional doing of a wrongful act without legal justification or excuse is ordinarily malicious; but, although an act may be intentional, yet it will not be malicious if there was no actual intention to invade any right."

██ No complaint is made as to this charge; but appellants urge that no malice was shown. This contention is not sustained. It is not necessary to prove affirmative malice or ill will. It may be inferred from the acts and conduct of the wrongdoer. It is not controverted that appellants acted without any legal authority whatsoever. Their conduct was deliberate, intentional and occurred while appellees were absent from the premises. It was such that the jury could properly infer that such illegal acts were done with a "conscious indifference to the right or welfare of the person or persons to be affected by it." See Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709. "The intentional doing of a wrongful act without legal justification or excuse is ordinarily malicious * * *." 13 Tex.Jur., §§ 133, 134, pp. 241–244.

██ So far as Rosa Lee Schutz was concerned she no longer owned the property, but had conveyed same to Stevenson and had been paid for it. Nor had she ever demanded that appellees vacate said room. As to Chester Schutz, appellee Fred Morris testified that upon his return to their room after supper on the night of September 28th, Rosa Lee and Chester had already "cleaned out" said room and had left the premises. That he then contacted Chester Schutz by telephone; and the following conversation took place: "The first thing I said was, 'What is the deal here?' And he said, 'Well, you can see.' And I said, 'Well, you are liable for a suit for moving our property,' and at that point in the conversation he sort of laughed and said,

'They wouldn't even listen to a damn Yankee in the court,' and I didn't know what to say, and he was laughing some more, and I said, 'You sound like a maniac', and he then tried to order me out and said, 'Why don't you get out of there. You know you don't belong there anymore.' I said, 'You can't just put people out.' And he said, 'I know what I am doing; I've done that before.' * * *."

■ Nor was it error to submit the issue of exemplary damages separately as to each defendant. Where two or more wrongdoers together take part in the wrong, it is entirely possible that one may be prompted by malice, while the other is not. See St. Louis S. W. Railway Co. of Texas v. Thompson, 102 Tex. 89, 113 S.W. 144, 19 Ann.Cas. 1250; Walker v. Kellar, Tex.Civ.App., 226 S.W. 796, 798. Or it may be that though both be guilty, the culpability of one is much greater than that of the other, thus warranting a greater penalty. The jury obviously so concluded in the instant case.

■ No set rule or ratio as between the amount of actual damages and that of exemplary damages can be laid down. Of necessity excessiveness vel non of exemplary damages must depend upon the facts of the particular case; and is a matter left largely to the discretion of the jury. The amount of exemplary damages warranted depends, among other things, upon the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety. See Wright Titus Inc. v. Swafford, Tex.Civ. App., 133 S.W.2d 287; 13 Tex.Jur., § 138, p. 248 et seq. In the Tex.Jur. citation are found references to numerous cases upholding awards of exemplary damages eight or nine times the amount of actual damages, depending upon the character and extent of aggravation in the particular case. Under the rules laid down, we are not prepared to say that the jury acted unreasonably or abused its discretion in the instant case.

■ Nor was there any error in argument of appellees' counsel to the jury requesting them to assess exemplary damages against appellants in a sufficient amount to adequately punish them, and to set an example to others. Such is the purpose of exemplary damages. 13 Tex. Jur., § 130, p. 238, and cases there cited.

Finding no error the judgment of the trial court is affirmed.

Affirmed.