## ALEXANDER TRUST ESTATE et al. v. LINDSEY DRUG CO. et al.

### No. 2655.

Court of Civil Appeals of Texas. Eastland.

Oct. 8, 1948.

Rehearing Denied Nov. 5, 1948.

476

Brooks, Duke & Templeton, of Abilene, for appellants.

W. E. Lessing and Bryan Bradbury, both of Abilene, for appellees.

COURTNEY GRAY, Justice.

Alexander Trust Estate, appellant, sued Reuben Lindsey and E. G. (Jack) Drake, doing business as Lindsey Drug Company, for rent alleged to be due and unpaid on a certain business house owned by appellant and leased in writing to appellee by contract to begin January 1, 1938, for a period of four years ending December 31, 1941, for a consideration of $6,300.00 to be paid in monthly installments set out in the petition, said original contract bearing date of July 8, 1937. Later, on May 15, 1941, the rental was changed to $200.00 per month. Still later, said contract was extended to January 31, 1943. Plaintiff alleged landlord's and mortgage liens to secure the payment of said rentals alleged to be due and unpaid, and prayed for judgment for unpaid rent and certain other items of expense incurred by plaintiff on behalf of the defendants in connection with said business, aggregating $1,833.48, with interest and such additional storage charges as may have accrued to the time of trial of the case, and for foreclosure of said landlord's and mortgage liens. In their answer, defendants alleged payment of all rentals accruing and due under the contracts, and that they were not indebted to plaintiff in any amount. In addition, they filed a cross-action against plaintiff for conversion of certain property incident to said drug store in the sum of $7,000.00. The case was tried to a jury and submitted on special issues, all of which were answered favorably to the defendants, whereupon the court rendered judgment for appellees in the sum of $3,799.67, from which plaintiff has appealed.

The record is very voluminous and includes much documentary as well as oral evidence. Many objections and exceptions were interposed to the admission and exclusion of evidence and twenty assignments of error are urged. In this opinion, we shall not attempt a detailed discussion of all the questions raised, but confine ourselves to what we consider to be the controlling issues. The defendant Drake was not a party to the original contract, but about

May 4, 1942, he bought said business from Lindsey and operated it for a short while under the original lease, said Lindsey guaranteeing the fulfillment by Drake of all the terms and conditions of the original lease. Drake seems to have soon thereafter sold said business back to Lindsey and George Jeter came into the picture. The business seems to have been moved into another building owned by plaintiff with George Jeter in charge and guaranteeing payment of the $200.00 per month rental for eight months, with the further provision that if Alexander Trust Estate deemed itself insecure, said mortgagee should have the option to foreclose said mortgage lien and declare all of said debt matured. Plaintiff alleged that it thereafter did deem itself insecure and declared eight future payments due, followed by suit on September 12, 1942, and sequestration of the mortgaged property. Later, by agreement and without a replevy bond, said property was taken out of the hands of the sheriff and stored in a building owned by plaintiff to minimize expense until trial of the lawsuit. Said property is still in storage in said building.

There is sharp controversy between the parties as to when the alleged conversion occurred, if it did occur. Appellant denies that there was a conversion by the act of sequestration which took place in September, 1942, but that if any wrongful act was done by plaintiff in such connection, it was condoned by defendant agreeing to take said property from the sheriff and allowing it to be stored in plaintiff's building. On the trial, defendants proved the values of said property as of April, 1943, which appellant contends was error, but the values should have been proven as of September 12, 1942. In answer to this, appellees contend that the taking was not completed until April 26, 1943, when the rental contract having expired, all rentals paid and demand for possession of said property made to appellant, and refused by appellant, the act of conversion thereby became complete and the values were correctly proven as of the latter date. We do not see any conversion in the act of suing out sequestration and levy of the writ. Appellees had expressly by contract conferred upon appellant the right, if appellant felt insecure, to proceed to take over the property, declare the entire amount due, and foreclose the lien. Appellees abandoned their original contention that appellant was actuated by malice. If the taking was wrongful and malicious, appellees undoubtedly condoned it by agreeing that said property be transferred from the custody of the sheriff to the custody of appellant. While the jury found that Lindsey owed appellant nothing at the date of sequestration, there seems to have been a bona fide controversy between the parties as to same. We hold that the trial court did not err in permitting proof of said values as of April 26, 1943.

The sequestration did not cover the stock and some of the equipment in said drug store, and subsequently, there seems to have been an oral agreement between Dr. J. M. Alexander and Lindsey by the terms of which Dr. Alexander was to take charge of same, including that levied upon, and lease said building to some other tenant for such sum as Alexander might be able to obtain and apply same on unpaid rent due by Lindsey; if so leased for more than $200.00 per month, Dr. Alexander was to have such excess, but if leased for less than $200.00 per month, Lindsey should be liable for the deficiency and for all rents to January 31, 1943, or for any time that said building was not leased. Appellant contends that it was further agreed that Dr. Alexander should take charge of said merchandise and fixtures, including that levied upon, and calculate the same at wholesale cost and credit Lindsey with fifty per cent (50%) thereof and retain the other fifty per cent for himself. Lindsey denied this part of the alleged agreement, and the jury found that such agreement was not made. Dr. Alexander did take charge of said merchandise and fixtures, sold some of it, stored some and moved nine wall cases to another building belonging to said estate occupied by one Bert Fineg. We may here say that the building originally leased and occupied by Lindsey Drug Company had been padlocked and Reuben Lindsey had been inducted into the military service. Some of the stock so taken over by Dr. Alexander was sold for what appellees insist was an inadequate price. We shall not go further

into detail, but the jury found in substance that appellees' indebtedness, by reason of such sales and rentals from Fineg, was fully discharged.

■ Under the facts as disclosed by the record, was there a conversion of said property by appellant in April, 1943? It is clear that appellant came into possession of same lawfully. But the lease contract expired on January 31, 1943, and the jury found that at said date, Lindsey owed appellant nothing. Lindsey had previously demanded that said property be re-delivered to him, and had indicated an intention to secure a truck and remove it. Appellant not only refused to surrender possession thereof, but had Lindsey enjoined from removing same.

"Conversion may consist in the wrongful detention of chattels under an assertion of right inconsistent with the owner's general dominion, particularly when the detention occurs after a demand for possession has been made." 42 Tex.Jur., pages 521, 522, Sec. 15; American Surety Co. of New York v. Hill County, Tex.Civ. App., 254 S.W. 241, affirmed Tex.Com. App., 267 S.W. 265; Gaw v. Bingham, Tex.Civ.App., 107 S.W. 931; Adams v. San Antonio Life Ins. Co., Tex.Civ.App., 185 S.W. 610, error refused.

■ Invoices of the merchandise and fixtures of Lindsey Drug Store were admitted in evidence and defendant Lindsey, over objection, was permitted to testify as to their correctness and as to values. As to their correctness, Lindsey testified that he was present and assisted in making said invoices; that he supervised the making of same, and they were correct. On the matter of values of fixtures, Lindsey testified that he had bought drug store fixtures in 1936, and from time to time had traded for other fixtures; that he had put in a drug store in Ballinger in 1937; that he had a drug store in Coleman in 1939, for which he purchased fixtures; and that he was familiar with the reasonable market value of fixtures of the character involved in Abilene, in April, 1943; that he had discussed the value of said fixtures at about said time with several people and the price for which they could be sold;

and that he examined the fixtures in controversy in April, 1943, when Fineg was operating the store. We think the trial court did not err in admitting said invoices in evidence, nor in admitting Lindsey's testimony as to values. Primarily, the matter is largely within the discretion of the trial court. See 19 Tex.Jur., page 206, Sec. 134; Rogers & Adams v. Lancaster, Tex.Com.App., 248 S.W. 660; General Motors Acceptance Corp. v. Killingsworth, Tex.Civ.App., 54 S.W.2d 266. Similar objection was made to the witness R. L. Howard, who also testified as to said values. Howard testified that he had dealt in drug fixtures, both new and second hand, for many years in connection with the operation of drug stores and had bought and sold fixtures for several years and had kept up with the market value of second hand fixtures during 1942 and 1943; that he knew the reasonable value of second hand drug fixtures in Abilene in April, 1943, and was familiar with the fixtures involved in the suit. We think he fully qualified to testify as to said values.

■ Several assignments of error relate to matters incident to suing out of the writ of sequestration, and exclusion of evidence as to the good faith of plaintiff in the matter. It is true that appellees, in their pleading, alleged malice and wrongful sequestration and prayed for exemplary damages in the sum of $5,000.00. But appellees abandoned this count and made no request for submission of a special issue thereon. Moreover, we have held that the sequestration as sued out was legal. Therefore, no injury resulted to appellant by reason of the exclusion of the evidence set out in said assignments.

By Bills of Exception 1 and 2, appellant complains of certain statements made in argument to the jury by counsel for appellees. Being very similar, they will be considered together. They related to Lindsey, his military service and the alleged attempt of appellant to overreach and take away from him his property. Judge Lessing said:

"Do you believe, you men of common sense, can you conceive of such a situation, where a boy had already volunteered

in the service, to serve his country in order that our institutions might be maintained and not become servants to Germany and Japan, and that the property which has been accumulated would retain its value and that we would not pay tribute to some dictator in Europe. That he had this property and he comes to you and he would offer you to make such a proposition that he would turn over his life savings to you and that you could do what you pleased with it and keep half of it, and after you had taken possession of the building apply the proceeds on the rent. Would you, could you conceive of any human mind that would permit a boy in the army to come in and make such a proposition, let alone take advantage of him. * * * No, gentlemen, that is beyond human reason, this issue 6 and 7 and that he should have 50 per cent of it. Dr. Jim Alexander taking 50 per cent of a boy's property that is in the army as compensation for him collecting a debt that he is not due. Gentlemen, the devil himself could not conceive of a more diabolical situation. Now, then we get down to the value of this property that was taken away from this boy while he was serving in the army. They go on about a note that they took up. Yes, we took up a note on some of his property. We paid $187.00 for it and now we claim attorneys fees on top of that. Yes, gentlemen, but they know that under the Sailors' and Soldiers' Relief Act they could not have sued him for that property * * *"

The objection to the argument was not specific except as to attorney's fees, but the court sustained the objection to any reference to attorney's fees, and qualified the bill as follows:

"The court hereby approves the above quoted portion of the record of what occurred during the argument of Defendant's counsel, and allows the same filed as a part of the record in this case, but qualifies this approval by pointing out that the only objection made by plaintiff's counsel to any portion of such argument is that objection hereinabove quoted in connection with the court's ruling thereon."

The reference was to said 15% attorney's fees.

Judge Bradbury said:

"Gentlemen of the Jury, here it was that Reuben Lindsey, they try to say something about an injunction and off limits. I don't know anything about that and the court hasn't mentioned it in his charge. I know one thing, he was good enough to volunteer to fight for his country, and when he's good enough for that it suits me and I am satisfied with him from then on. And, I don't care about them coming in here and trying to bring up a smoke screen about injunctions or about off limits. I know if he is good enough for Uncle Sam to stand beneath the folds of his Flag and fight for him, he ought to be good enough to stand before this Jury and have justice in the 104th Judicial District Court of Taylor County and I believe he will get it from this Jury. Dr. Alexander not only wants the blood and the bones, but he wants the hide and the hair, and we are asking you to return to this boy the value of that merchandise which they got and confiscated and converted and refused to give back to him, and say to them, what the evidence says, that it is worth $6,800.00 and we are going to say to you, 'Reuben, you went off and you came back and we are going to restore to you that which you are justly entitled to have under the law and the evidence in this case.' I thank you."

Said Bill of Exception No. 2 was qualified as follows:

"The court hereby approves the above quoted portion of the record of what occurred during the argument of defendant's attorney, but qualifies this approval by pointing out that plaintiff's counsel did not object to any portion of said argument and the Court had no opportunity to instruct the Jury not to consider same."

 A brief review of what occurred during the trial will aid in appraising said Bills of Exception. To justify the sequestration, appellant, plaintiff below, got into the record that said Lindsey had been enjoined from selling whiskey and later adjudged in contempt for allegedly violating same, which judgment of contempt seems to have been set aside. Appellant excepted because the trial court refused to permit the judgments as to the·

**480**

padlocking and injunction to be introduced in evidence. Whether so intended or not, said matters and testimony admitted were calculated to discredit Lindsey before the jury. There was testimony as to Lindsey's draft status and his subsequent voluntary enlistment, appellant insisting that he was, therefore, not in position further to operate said business, which constituted another basis for sequestration. In the opening address to the jury, counsel for appellant alluded to the fact that Lindsey was in the army, doing his duty, and not in position to look after the affairs in controversy. Counsel's remarks were by agreement appended to said bills of exception. Thus it becomes apparent, (a) that the arguments of which complaint is made were not as to matters entirely outside the record, and that the reference to the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.A.Appendix, § 501 et seq., was a correct statement of the law. See Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S.W. 808; (b) that Lindsey's service in the army was brought into the argument by appellant's attorney, and (c) if it was error to discuss Lindsey's military status, it was invited error; (d) the plaintiff, whether purposely or not had discredited Lindsey before the jury, and his attorneys, in reply, had the right to show, if they could, that Lindsey was not wholly bad and was performing a patriotic duty to his country. It is not unusual, nor is it inflammatory for speakers to become eloquent in speaking of the service of our young men in the late war. While in this case, some of the expressions used were undoubtedly rather strong, yet considering the record as a whole, and the fact that no objection was made to the particular statements claimed to have been inflammatory and prejudicial, we think that reversible error is not shown. We further think that had timely objection been made, an instruction from the court would have eliminated any harmful effect. 41 Tex.Jur. 821, 830; Ramirez v. Acker et al., 134 Tex. 647, 138 S.W.2d 1054.

All the assignments of error brought forward have been carefully considered and those not discussed are overruled.

The judgment of the trial court is affirmed.

Associate Justice LONG took no part in the disposition of this appeal.

GRISSOM, C. J., concurs.