**Buster LYON, Appellant,**

**v.**

**George Allen WOOD et al., Appellees.**

**No. 16088.**

Court of Civil Appeals of Texas.

Dallas.

Nov. 30, 1962.

**180**

Coon, Dedman, May & Hoffman, and Marvin David Shwiff, Dallas, for appellant, on appeal only.

Allen Melton and Brown & Elliott, Dallas, for appellees.

WILLIAMS, Justice.

Suit by George Allen Wood and his former wife, Ruth Wood Flannagan, against Buster Lyon, d/b/a Buster Lyon Auto Company, to recover actual and exemplary damages for wrongful conversion of plaintiffs' automobile. Plaintiffs alleged fraud and deceit which resulted in the wrongful conversion. Following a jury trial judgment was rendered for plaintiffs in the sum of $75 actual and $2,000 exemplary damages.

Appellant Lyon assails the judgment of the trial court in twelve points of error. The essence of appellant's points one through ten, which have been grouped together, is that the facts revealed by the record demonstrate that appellees have no cause of action against appellant, as a matter of law, and therefore the trial court fell into error in failing to sustain appellant's motion for instructed verdict and motion for judgment non obstante veredicto. These points necessitate a careful review of the evidence.

On March 9, 1959, appellees purchased a 1952 Buick automobile from appellant Lyon, a used car dealer. The consideration for the sale was $195, payable $90 cash and the balance in weekly installments of $12.50 each. Appellees made the down payment as well as the first installment payment but then defaulted. On April 6th, 1959 appellant took possession of the automobile by authority of the terms of a chattel mortgage executed by appellees. The automobile was returned to the used car lot of appellant but not sold at that time. On April 20th, 1959 and again on April 21st, 1959 appellees went to the used car lot where they observed the automobile with a "for sale" sign placed on the windshield announcing the price of $195. On each occasion appellees advised appellant that they wanted to redeem the car by making payments of the amount due. Appellant told appellees that he had already sold the automobile and that they could not have it back. While on the used car lot appellees observed two prospective customers inspecting the automobile. On both the 20th and 21st of April appellees offered to pay the balance due on the automobile and any reasonable cost incident to repossession. This tender was refused. Appellees consulted an attorney on April 21st and such attorney called appellant and demanded the return of the automobile, advising appellant that appellees would pay all charges together with the balance due on the mortgage. Appellant refused the tender stating that the automobile had been sold. On the same day appellees sent a friend to the used car lot of appellant and had him offer to purchase the automobile for $195. On the trial of the case appellant admitted that the automobile had not been sold when appellees made their offer and demanded the return thereof. Appellees never regained possession of the automobile and it was later sold by appellant.

The jury found that the market value of the automobile in April 1959 was $195. The undisputed outstanding indebtedness was $120 leaving a balance of $75 which the jury found to be actual damages. The jury further found that appellant had represented to appellees that the car had been sold; that such fact was not true; that appellant represented to appellees that the automobile had been sold by him and that plaintiffs could not get the automobile back; that such fact was not true; that appellees offered to pay the appellant in full the obli-

gation due on the automobile on April 21st, 1959; that the fraudulent representations made by appellant were intentionally made by him for the purpose of inducing appellees to abandon their claim to the automobile; that appellees believed and relied upon such representations made by appellant; that failure of appellant to accept appellees' offer constituted malice and that appellees should be awarded exemplary damages in the sum of $2,000.

The mortgage in question contained the following essential provisions:

"In case default be made the payment of said debt, or interest, or any installment of said note * * * the whole amount herein secured, remaining unpaid shall at once become due and payable, or mortgagee or assigns may, without notice or demand, foreclose the mortgage by sequestration, receivership or otherwise, and mortgagee or assigns is also hereby authorized to enter upon the premises where said goods and chattels may be, and remove and sell the same, and all equity or redemption of the mortgagor therein, either at public auction at the Courthouse door or any county in the State of Texas, or elsewhere, or by private sale, without notice, for cash or on credit at Dallas, Texas * * * mortgagee or his assigns shall first pay the cost of foreclosure of this mortgage and the expense of purchasing, taking, keeping, advertising and selling said goods and chattels * * * or other expenses incurred thereunder * * * and apply the residue towards the payment of said indebtedness or any part thereof in such manner as mortgagee or assigns may elect, rendering the surplus, if any, unto the said mortgagor, his executors, administrators and assigns upon demand."

■ Appellant contends that his actions in this case were justified by the rights granted him by the mortgage and therefore, as a matter of law, there could be no conversion. With this contention we are unable to agree. By taking such position appellant postulates the performance of all conditions precedent contained in the mortgage contract so as to effectively accomplish a non-judicial foreclosure of the mortgage lien. However, while it is true appellant took possession of the mortgaged property peacefully, it is equally true that he did not do that which was also required of him in the mortgage contract, namely, sell the property and account for the proceeds. The taking alone is not sufficient to amount to a non-judicial foreclosure. The taking must be followed by the sale in accordance with the terms of the mortgage. The repossession of the property covered by the mortgage does not change the status of the parties as mortgagor and mortgagee. By taking possession of the property the seller protects his security. The seller is still the holder of the mortgage and his interest in the automobile is not increased. His repossession of the property gives him a right to go further and sell the same, applying the proceeds to the principal due, plus any charges or expenses incurred in repossession. The status of the parties does not change until the purchaser satisfies the debt at a public or private sale of the property involved.

After repossession and prior to sale appellant assumed the added responsibility of a trustee of the property for the appellees' interest therein. Until the sale was consummated appellees had a right to reacquire the automobile upon paying the obligation due plus expenses.

■ It is our opinion that the actions and conduct of appellant following peaceable repossession, including his refusal to accept the tender of appellees, together with false representations found by the jury, constitutes an illegal conversion of the automobile. In 12 Tex.Jur.2d "Chattel Mortgages" § 80, p. 107, the rule is announced:

"In General, Foreclosure may be accomplished by a sale of the mort-

gaged property under a power conferred in the instrument or by an order of the proper court decreeing foreclosure. Whatever the respective rights prior to foreclosure, it is only through a foreclosure that the lien for security is merged into a title to the property or its proceeds. Hence any unauthorized appropriation of the property by the mortgagee before there has been a foreclosure renders him liable as for a conversion or trespass."

Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 7–A, Ch. 111, § 4727, pp. 72–73 announces the rule: .

"This right of the mortgagee is subject, however, to the equity of redemption in the automobile, and if the mortgagee takes possession of the automobile under the chattel mortgage after default, he must either sell it according to the terms of the chattel mortgage or become liable to the chattel mortgagor for the value of the car to be applied on the indebtedness secured by the chattel mortgage. Exercise of dominion over a repossessed vehicle prior to purchase thereof in foreclosure proceedings is a conversion, * * *."

In the case of John E. Morriss v. O'Neal, Tex.Civ.App., 109 S.W.2d 1156 the court said:

"It is well settled that a mortgagee may avail himself of the terms and provisions of a mortgage instrument, without being liable for a conversion. (Citing cases). In seizing and selling chattels under a power of sale, however, the mortgagee must not extend the authority given. In a sense he is the trustee for the mortgagor, and his duties are those of a trustee. As well stated in Block Motor Co. v. Melia, et al., [Tex.Civ.App.] 247 S.W. 666, 'He cannot claim the property as his own and sell it for his own benefit, and then defend under the power of sale given in the mortgage. If he deals with the

property as his own and sells it as his own, he is guilty of a conversion.'"

■ That a conversion may consist of the wrongful detention of chattels under an assertion of right inconsistent with the owner's general dominion is supported in Alexander Trust Estate, et al., v. Lindsey Drug Co., Tex.Civ.App., 214 S.W.2d 475; Neyland v. Brammer, Tex.Civ.App., 73 S.W.2d 884; Crawford v. Thomason, 53 Tex.Civ.App. 561, 117 S.W. 181 and Parchman v. Parchman, Tex.Civ.App., 239 S.W.2d 902.

It being established in this record that the automobile had not been actually sold at the time appellees made a tender of the amount due, plus expenses, we hold that there had not been a non-judicial foreclosure of the chattel and that act on the part of the appellant in retaining dominion over the property in the circumstances amounted to an illegal conversion of the property.

While it is true that appellees did not actually produce and exhibit the money on the occasion of the offer to pay the balance due plus expenses, on April 21st, we are of the opinion that the tender made by appellees as well as their attorney was valid. Texas Auto Co. v. Clark, Tex.Civ.App., 12 S.W.2d 655.

The issue of liability vel non being clearly shown by the pleadings and evidence in this case, and having carefully reviewed the entire testimony which supports the jury's finding on the issues of conversion, fraud and deceit, we are of the opinion that this record clearly demonstrates liability on the part of appellant therefore his first ten points on appeal are overruled.

By his eleventh and twelfth points appellant contends that the trial court erred in awarding exemplary damages because such finding was (1) against the overwhelming weight and preponderance of the evidence or (2) if not, then the award of $2,000 as exemplary damages is so excessive as to

demonstrate prejudice and malice on the part of the jury.

■ That there may be exemplary damages awarded where conversion is accompanied by fraud, malice or gross negligence, is well settled. 14 Tex.Jur.2d (Conversion) § 25; 26 Tex.Jur.2d § 136, p. 121.

We have carefully reviewed the entire record, as we are required to do, and we find ourslves unable to agree with appellant that the finding of the jury relating to exemplary damages is contrary to the great weight and preponderance of the evidence. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

■ We come now to a consideration of appellant's contention that the award of $2,000 exemplary damages is grossly excessive. Appellant lays great stress on the fact that the ratio between the actual damages of $75 to the exemplary damages of $2,000 is approximately 27 to 1. While our courts have held that exemplary damages should bear a reasonable proportion to actual damages sustained, the ratio will necessarily depend upon the circumstances of each individual case. Our Supreme Court has never fixed any exact ratio between actual and exemplary damages. Such question of excessiveness must be determined from the facts of each particular case in order to determine whether or not the award was made as a result of passion and bias. Houston-American Life Ins. Co. v. Tate, Tex.Civ.App., 358 S.W.2d 645; 17 Tex.Jur.2d § 187, p. 256; Schulz v. Morris, Tex.Civ.App., 201 S.W.2d 144; Flanary v. Wood, 32 Tex.Civ.App. 250, 73 S.W. 1072.

■ With this rule in mind we have carefully reviewed the evidence relating to the actions and conduct on the part of appellant towards appellees which might afford the basis of an award of punitive damages. The evidence is undisputed that appellant repossessed the automobile peace-ably. There is no evidence that appellant threatened appellees either prior to or after the repossession. There is no evidence of harassment or intimidation. There is no evidence of use of abusive language. There is no evidence that appellant informed appellees' neighbors, friends or creditors of the non-performance of the mortgage contract. There is no evidence of threatening or insulting letters or telephone calls or efforts to blacklist the appellees. On the other hand there is positive evidence, as found by the jury, that appellant made repeated misstatements of fact to appellees concerning the sale of the automobile and that appellant, with malice aforethought, led appellees to believe that they could not recover the automobile. There is abundant evidence that appellees were prevented from recovering the automobile after they made a tender of the money due thereon.

With these facts in mind we are of the opinion that the award of $2 000 exemplary damages is excessive by the amount of $1500. Accordingly, appellees are given ten days from this date in which to file a remittitur of $1500 of the exemplary damages awarded. If they shall do so within said period of time the judgment will be affirmed, as modified, otherwise the judgment will be reversed and the cause remanded. Rule 440, Texas Rules Civil Procedure.

Affirmed on condition of remittitur.

YOUNG, J., not sitting.

## ON REMITTITUR

The appellees having filed a remittitur in the amount of $1500, as suggested in the foregoing opinion, the judgment of the trial court is reformed and affirmed in the principal amount of $575, with cost of this appeal being assessed equally against appellant and appellees.