Richard W. **RUSSELL** et al., **Appellants,**

v.

George **TRUITT** et al., **Appellees.**

No. 17830.

Court of Civil Appeals of Texas, Fort Worth.

Aug. 4, 1977.

Rehearing Denied Sept. 8, 1977.

**950**

Trickey & Trickey, Richard M. Trickey, Fort Worth, for appellants.

Steves, Morgan & Harper, James E. Mann and Sterling W. Steves, Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

Defendants appeal from a judgment for $8,000.00 plus $55,000.00 exemplary damages in a suit for breach of fiduciary duty by the agent and co-venturer in an apartment construction and management project. Among the issues presented by this appeal is whether the award of equitable relief for breach of fiduciary duty will support an award of exemplary damages.

We affirm.

Plaintiffs George W. Truitt, Gene Felker, Ray Campbell, W. J. Chamy, Donald G. Reames, and Philip H. Trew were joint venturers in the Hurst Estates Apartment Project on Precinct Line Road, along with Frank Campbell and Defendant Richard W. Russell.

The joint venturers appointed as their agent for the project Defendant Richard W. Russell Company, Inc., whose president and sole owner is Defendant Russell. Defendant Russell also owns and controls Defendant Rubaco Builders, Inc., whose president was co-venturer Frank Campbell. The joint venturers rejected a bid submitted by Rubaco on the construction contract.

On February 20, 1969, with the knowledge of plaintiffs, Defendant Russell Company, as agent, entered into a construction contract with Allied Enterprises, Inc. On March 1, 1969, Allied and Defendant Rubaco Builders entered into a letter agreement to share profits and losses on the construction project and give Rubaco Builders final authority to approve or disapprove the subcontractors' work. This agreement was signed for Rubaco Builders by its president, Frank Campbell, who was himself a co-venturer with plaintiffs and Defendant Russell. Plaintiffs allege that this letter agreement was made without their knowledge and in spite of their express rejection of Rubaco Builders' bid on the contract.

The project later encountered difficulties, and Allied abandoned work. Plaintiffs were then told that Allied was not bonded, although they had directed that a $150,000.00 performance bond be obtained.

Rubaco Builders submitted another bid for the contract and was again rejected by the joint venturers. The joint venturers hired Frank Campbell as sub-agent to complete the project. In early 1970 the agency of Defendant Russell Company was terminated. Eventually the project's long-term financing was withdrawn, and the First National Bank of Fort Worth foreclosed on the project.

Plaintiffs made the following allegations in part: Defendants wilfully and intentionally concealed the secret written agreement of March 1, 1969, and plaintiffs learned of it only by accident in March 1970. This concealment was a violation of the defendants' fiduciary duties as managing agent and managing co-venturer. Rubaco, Russell and Allied subsequently had conflicts on the progress of the job and on the amounts paid out of the interim loan and had other problems directly and proximately caused by the secret joint venture arrangements created by Russell. Plaintiffs sought to recover the $500.00 monthly payments made to their agent, Defendant Russell Company and exemplary damages of $370,908.14 from Russell individually and the other defendants jointly and severally for the breach of fiduciary duty.

The jury found (1) that Russell, the Russell Company and/or Rubaco entered into an agreement with Allied without the knowledge of the respective plaintiffs; (2) that the letter agreement of March 1, 1969, between Rubaco and Allied gave Russell an advantage to himself at the expense of the plaintiffs; (3) that the defendants entered into the agreement with the intent to secure an advantage over the plaintiffs; (4) that the defendants received no monetary advantage as a result of the agreement; and (5) that the plaintiffs were entitled to $55,000.00 exemplary damages. The court then rendered judgment for the plaintiffs for $8,000.00 plus an additional $55,000.00 as exemplary damages.

Defendants contend that the trial court erred in rendering judgment against them for "actual damages" in the amount of $8,000.00 because there is no supporting pleading that the defendants failed to perform the agreement as managing agent with the plaintiffs and no evidence to support said damages. They also argue that there is no evidence and insufficient evidence that the alleged secret agreement was the proximate cause of any damages to the plaintiffs.

■ We overrule points 1, 2, 9, and 10 and note at the outset that the court did not label the $8,000.00 award "actual damages." Plaintiffs need not plead a failure to perform the agreement as managing agent in order to recover the $8,000.00. The evidence is undisputed that $8,000.00 in agency fees was paid to Defendant Russell Company. In *Moore v. Kelley*, 162 S.W. 1034, 1037 (Tex.Civ.App.—Amarillo 1914, writ ref'd), the court quoted the following with approval:

"An agent is held to uberrima fides in his dealings with his principal; and, if he acts adversely to his employer in any part of the transaction, or omits to disclose any intent which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal as to forfeit any right to compensation for services."

Here the plaintiffs pled as a breach of fiduciary duty the alleged secret agreement and sought recovery of the $500.00 monthly payments made to Defendant Russell Company for acting as their agent pursuant to written contract. No other pleadings were necessary to support the $8,000.00 award.

There was no fact issue raised under these pleadings as to the amount recoverable, since the amount paid in agency fees was undisputed. Plaintiffs were entitled to their recovery as a matter of law if the breach of fiduciary duty was proved. *Anderson v. Griffith*, 501 S.W.2d 695 (Tex.Civ. App.—Fort Worth 1973, writ ref'd n.r.e.); *Moore v. Kelley, supra.*

Defendants take the position that the plaintiffs' damages resulted from the general contractor's failure to complete the project, his drawing down construction money ahead of the completion of improvements, and the falsification of accounts to show that materials had been paid for when in fact they had not.

■ Defendants' argument does not address the issue. If the letter agreement constitutes a breach of the defendants' equitable duties as a fiduciary, it is unnecessary to decide whether the breach was the proximate cause of the project's failure. The breach automatically results in the forfeiture of the agent's compensation. *Anderson v. Griffith, supra.*

■ In point 3 the defendants argue there is insufficient evidence to support the $8,000.00 award because the evidence conclusively shows that Russell and Frank Campbell paid over 16⅔ and 15% of the $8,000.00 respectively and because both later paid a portion of the funds due from defaulting joint venturers.

Defendants' point in effect attempts to raise the defense of set-off based upon the contributions of the two non-plaintiff joint venturers. The pleadings do not contain any allegations that the defendants are entitled to a set-off, and they requested no jury findings on the question. Having thus raised it for the first time on appeal, the question in point 3 is waived. *Machann v.*

*Machann*, 269 S.W.2d 826 (Tex.Civ.App.— Waco 1954, writ ref'd n.r.e.); Tex.R.Civ.P. 94.

■ We also overrule defendants' points 4 and 5 attacking the $8,000.00 award on the grounds there is no evidence and insufficient evidence that defendant had any duty as agent for plaintiffs to do anything other than enter into the initial contract with the builder of the apartment units until such time as the construction was completed. Defendants cite no authority in support of these points.

The pertinent language of the Management Contract and Agreement between the joint venturers and the agent, Defendant Richard W. Russell Company, Inc., for the Hurst Estates Apartment Project is as follows:

WHEREAS, the parties . . . desire that Richard W. Russell Co. act as their Agent in arranging for the construction of said apartment units and as their Agent in managing the said same apartment house unit during and after construction of the same; and

WHEREAS, said Richard W. Russell Co. is willing to act as Agent for the OWNERS upon the terms and conditions hereinafter set forth;

NOW, THEREFORE . . . it is agreed between the parties as follows: 1. *Employment of Agent.* The OWNERS hereby employ the AGENT as the sole and exclusive renting and management agent of the property . . . .. Further, OWNERS authorize the said Richard W. Russell Co. as their AGENT to enter into a contract with a contractor to construct apartment units . . . ..
2. *General Responsibility and Authority of Agent.* OWNERS authorize AGENT to take over and effect complete management of the aforesaid apartment units during their construction and after completion . . . ..

.    .    .    .    .

7. *Compensation of Agent.* The OWNERS shall pay to the AGENT the following compensation:

a) *Initial Compensation.* For management from the closing date of the land acquisition to the time that the management fee as hereinafter provided from leasing income equals or exceeds $500.00 per month, the AGENT shall receive a fee of $500.00 a month, payable out of interim financing. . . .

Moreover, an agreement signed by all joint venturers, including Defendant Russell, recites that the "Richard W. Russell Co. will act as Agent for the parties to this agreement in all matters relating to the . . . property and the construction of an apartment complex thereon . . . ."

Defendant Russell Company continued to accept the $500.00 monthly agency payments long after the construction contract was awarded on February 20, 1969, and its fiduciary role as agent was not terminated until early 1970.

Defendants also argue in points 6 and 7 that the $8,000.00 award was error because there is no evidence and insufficient evidence to show that the agreement of March 1, 1969, between Defendant Rubaco Builders and Allied was inconsistent with, or contrary to the interest of plaintiffs.

◼ In considering the no evidence point we must view the evidence in the light most favorable to the jury's findings and disregard all the evidence to the contrary. If there is any evidence of probative force to support the jury's findings, we are bound by those findings. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

◼ In considering whether the evidence is insufficient to support the jury's findings, we must review all the evidence. The case should be remanded for new trial only if the verdict is so contrary to the overwhelming weight of all the evidence as to be clearly wrong or manifestly unjust. *In re King's Estate, supra.*

The pertinent provisions of that letter agreement signed by Allied's president, John Olmstead, and Frank Campbell, president of Rubaco, were as follows:

For consideration hereinafter mentioned, Rubaco Builders, Inc., agrees to enter into a joint sponsorship of said project with you. In computing distribution of profits, an allowance of: (1), $9,000.00 for your job foreman; (2), $8,000.00 for Allied Enterprises, Inc.'s administrative overhead, and; (3), $8,000.00 for Rubaco Builders, Inc.'s office overhead, shall be applied to the contract price of $558,642.00, developing an adjusted basis for profit computation of $553,-642.00. We agree to split any and all net building profits equally on a 50–50 basis taking the aforementioned bid-basis and allowances into consideration. . . . Likewise, any loss occuring [sic] from any additional cost above the adjusted basis figure of $533,642.00 shall be shared equally by Allied Enterprises, Inc., and Rubaco Builders, Inc., and shall be paid by both parties when and as needed after determination has been made that said loss exists.

Further, it is agreed by both parties to this letter that Rubaco Builders, Inc., shall take a prominent role in co-ordinating efforts with sub-contractors, and in the scheduling and charting of work stages. Rubaco Builders, Inc., shall have final authority to approve or disapprove.

.        .        .        .        .

Defendants' position is that the letter agreement arose after the construction contract of February 20, 1969, was signed, therefore having no possible bearing on it, and that in fact the letter agreement put defendants in a better position to look after the interest of plaintiffs. Frank Campbell testified Russell said there was no need to disclose the agreement to plaintiffs because it would give defendants added insight into the construction costs.

Although the alleged secret agreement may have put Defendant Rubaco Builders in a better position to look after the interests of the plaintiffs it also put defendants in a position to make an additional profit which plaintiffs would not share. There was testimony that the agreement created a situation in which it would have been in Defendant Rubaco Builders' interest to cut materials and labor costs in order to in-

crease its profit. (There is testimony, however, that the joint venturers were satisfied with the quality of the work done.)

Under the terms of the letter agreement, Allied and Defendant Rubaco Builders were to split any savings on the construction job. Truitt testified Russell had told plaintiffs before the contract was awarded that he did not know Olmstead's reputation, and asked Truitt to investigate him. The evidence is uncontroverted, however, that Defendant Russell helped Olmstead with the preparation of Allied's bid format before it was submitted. In addition, Trew testified that some of the subcontractors, when contacted later, voluntarily reduced their bids from the amount specified in Allied's bid. He testified he could not prove they had padded their bids, and he declined to testify that a kickback scheme was necessarily the explanation for their reductions.

There was also evidence in a letter from Olmstead, Allied's president, to Frank Campbell, president of Rubaco Builders, in which Olmstead advanced the view that the letter agreement was merely a device to pay Rubaco Builders for overhead expenses which it did not actually incur.

Plaintiffs were aware of a possible conflict of interest: they testified that they had expressly rejected Rubaco's bids on the construction contract because of the conflict of interest as well as Rubaco's lack of experience. They also testified they would not have invested in the project had they known Rubaco Builders would become a joint venturer with Allied.

Under these circumstances we overrule points 6 and 7 and hold there was ample evidence that the agreement was contrary to plaintiffs' interest.

Alternatively, we hold that the mere failure to disclose to plaintiffs all aspects of the transaction is in itself a breach of agent Russell Company's and co-venturer Russell's fiduciary duty. *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corporation,* 138 Tex. 565, 160 S.W.2d 509 (1942); *Reynolds-Southwestern Corp. v. Dresser Indus., Inc.,* 438 S.W.2d 135 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.).

Defendants further contend in point 8 that the $8,000.00 award was error because there was a disputed fact issue over the amount of money paid by plaintiffs to defendants, paid by Allied to defendants, and paid back by defendants to plaintiffs or for their benefit, on the apartment project. Their position is that the jury found this issue against plaintiffs in finding that defendant did not receive any monetary advantage over plaintiffs as a result of the March 1, 1969 agreement with Allied. Defendants also state that there was conclusive evidence that defendant put more money into the project than defendant received from Allied under the March 1, 1969 agreement.

The alleged disputed fact issues to which defendants refer concern transactions of Rubaco Builders. Defendants argue that Rubaco Builders paid out more on behalf of the joint venturers than it took in from Allied, leaving it with a deficit of $4,386.00.

However, there is no dispute that an $8,000.00 management fee was paid to Defendant Russell Company, the agent for the joint venturers. The jury's finding that defendants received no monetary advantage does not render the $8,000.00 award improper here. Nor was any special issue necessary to support the award because there was no dispute as to the amount of the agency fees.

In point 11 defendants argue that the jury's answer to special issue 1, that defendant and Allied entered into the March 1, 1969 agreement without plaintiffs' knowledge, should be disregarded because it is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust.

Defendants point to a tape recording of a September 13, 1969 meeting introduced into evidence in which Trew, Frank Campbell and Russell made reference to a deal between Russell, Frank Campbell, and the primary contractor for assistance with and supervision of the record-keeping. They did not refer to shared profits or losses. At

any rate, this conversation is certainly not evidence that plaintiffs knew of the agreement at the time it was entered into on March 1, 1969, and plaintiffs all testified they had no knowledge of the agreement when it was made. Frank Campbell also testified that Russell told him it was unnecessary to disclose the existence of the letter agreement to plaintiffs because there would be no additional cost to them and it would provide an opportunity to gain "some insight as to the construction costs."

In point 12 defendants argue that the award for exemplary damages of $55,000.00 is error because there is no showing under the pleadings, special issues and evidence that plaintiffs are entitled to any actual damages.

■ We disagree. Although there is a division of authority on the question whether a court of equity can or will grant punitive or exemplary damages as incidental to equitable relief, the law in Texas is that it may do so. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963); Annot., 48 A.L.R.2d 947 (1956).

■ The forfeiture of the $8,000.00 in agency fees is a form of equitable relief awarded for the breach of the equitable duties of those in a fiduciary role. D. DOBBS, REMEDIES, § 10.4, at 679 (1973). Accordingly, under the rule in *International Bankers Life, supra*, no actual damages are necessary to support the exemplary damage award.

In point 13 defendants argue there is no evidence or insufficient evidence to show that defendant intended to injure plaintiffs. In point 14 it is argued that the jury's answer to Special Issue Number 1B should be disregarded because there is insufficient evidence to support the finding that defendant intended to secure an advantage over plaintiffs and such finding is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust.

■ Point 13 actually raises both fact and law issues and is thus subject to the criticism that it is multifarious. However, we will consider both questions raised therein because we are able nonetheless to determine the nature of the complaint. *Brungs v. Consolidated Plan Service, Inc.*, 529 S.W.2d 79 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.).

Defendants cite no authority in connection with these points. They argue that because Russell, as a co-venturer, also had much at stake in this project, he would not have intended to injure himself and that he and his companies actually lost more money on the project than any of the plaintiffs.

■ Such argument is irrelevant and does not address the central issue of fiduciary responsibility already discussed. The issue is not whether defendants intended to injure the joint venturers but whether they intended to gain an additional benefit for themselves. *International Bankers Life, supra*. The jury so found, and there is ample evidence to support that finding.

■ In defendants' final point it is argued that the $55,000.00 exemplary damages award is excessive and indicates that the jury was influenced by passion or prejudice against defendants. Defendants assert that this award is out of proportion to and bears no reasonable relationship to the $8,000.00 award.

The question of excessiveness of exemplary damages depends on the facts of the particular case and is largely within the discretion of the jury. Among the factors to be considered are "the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties concerned, and the extent to which such conduct offends a public sense of justice and propriety." *Cain v. Fontana*, 423 S.W.2d 134, 139 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.); *Schutz v. Morris*, 201 S.W.2d 144, 147 (Tex.Civ.App.—Austin 1947, no writ).

In this case the jury found that defendants entered into a secret agreement without plaintiffs' knowledge. Moreover, the evidence shows the agreement was made after the plaintiffs had expressly rejected

Rubaco's construction bid. The agreement gave the agent a secret advantage in the form of an opportunity to reap extra profits over those of the co-venturers and principals who were relying on Russell and his company as their agent in the project.

Under these circumstances we find no evidence that the jury was influenced by passion or prejudice. We hold that the exemplary damages award is not out of proportion to the $8,000.00 award. Ratios of over 8 to 1 have been upheld on appeal as bearing a reasonable relationship to actual damages in appropriate cases. *Cotton v. Cooper*, 209 S.W. 135 (Tex.Com.App.1919, jdgmt. adopted).

All points having been considered, each is overruled and the judgment is affirmed.