HOUSTON NATIONAL BANK, Appellant,

v.

Stanley H. BIBER et al, Appellees.

No. A2430.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Feb. 25, 1981.

Rehearing Denied March 25, 1981.

Willis Witt, Liddel, Sapp, Zivley, Brown & LaBoon, Joe C. Holzer, Hirsch, Westheimer, Block & Wilk, Houston, for appellant.

Eugene J. Pitman, DeLange, Hudspeth, Pitman & Katz, Houston, for appellees.

Before J. CURTISS BROWN, C. J., and PAUL PRESSLER and JUNELL, JJ.

JUNELL, Justice.

This is an appeal from a judgment entered in a conversion suit to recover the proceeds of certain checks received by Houston National Bank which checks represented capital contributions from two proposed limited partners to an as yet unformed limited partnership. Judgment was entered on the jury verdict which found that the bank converted the proceeds of the checks, and the actual and exemplary damages as found by the jury were awarded the plaintiffs. The bank appeals contending a conversion action is inappropriate under the facts of this case, that certain definitions submitted were erroneous, and that the damage awards, both actual and exemplary, were not supported by the evidence.

Appellees Biber and Meinhard were contacted in 1973 by R. E. Walker regarding investment as limited partners in a project called French Oaks West, Limited ("French Oaks"). The limited partnership project involved the purchase of property in Beaumont, Texas, on which would be constructed an 80-unit apartment complex to be known as French Oaks West and to be owned by the partnership. Walker was employed by Don Bodin and John Jamail to secure investors in the project. Walker had served as broker for Bodin and Jamail on similar projects in the past. Bodin was the president of Urbane Constructors, Inc. ("Urbane") which held an option to purchase the subject property. A loan of $1,150,000.00 had been made to Urbane on August 20, 1973, by Houston National Bank, to finance the purchase of the property and construction of the project. Bodin signed the promissory note and deed of trust associated with the loan in his capacity as president of Urbane and, along with his wife and Jamail, personally guaranteed the note. The loan was made in the name of Urbane instead of French Oaks because the partnership was not yet formed. It was intended that after the partnership was formed and approval obtained from the bank for the partnership to assume the loan, the liability for the loan was to be assumed by the partnership upon conveyance of title to the property. On August 20, 1973, and September 19, 1973, a total of $271,813.00 was advanced under the loan to Urbane in order to purchase the property and pay certain expenses.

Appellees Biber and Meinhard agreed to participate in the limited partnership and each sent Walker their personal checks payable to French Oaks in payment of their respective capital contributions. Biber's check, dated October 13, 1973, was in the amount of $24,208.10; and Meinhard's, dated November 9, 1973, was in the amount of $20,173.39. On separate occasions Walker took both checks to Houston National Bank where, there being no bank account established in the name of the partnership in which to deposit the checks, K. E. Pulley, the service officer for the loan to Urbane, reissued the checks in the form of two cashiers' checks for each personal check, one payable to Walker for 10% of the amount of each personal check, representing Walker's commission, and the other payable to French Oaks for the remaining 90%. The two checks payable to French Oaks were

then placed in a bank file, supposedly to be held until the partnership was formed and an account opened into which they could be deposited. The two payable to Walker were given to Walker, one on October 16, 1973, and the other on November 23, 1973.

A certificate of limited partnership for French Oaks was filed with the secretary of state on December 14, 1973, which was signed by Don Bodin on December 12, 1973, as general partner and as attorney-in-fact for Biber and Meinhard, the limited partners. Also on December 14, 1973, Bodin, as president of Urbane, executed an assumption deed to French Oaks, on the Beaumont property, the consideration for which was recited to be the assumption by French Oaks of the outstanding balance on the loan to Urbane. This assumption deed was never recorded. No other documents, partnership agreements, powers of attorney, etc. were ever signed by Biber or Meinhard. Their understanding was that their contributions were being held until the partnership was formed and the loan assumption approval obtained for the partnership and that if such did not occur, their checks would be returned to them.

There was no evidence that the bank ever transferred the liability for the debt to French Oaks on their books or that French Oaks ever accepted the assignment of the debt. On January 7, 1975, interest payments on the note being in default, a foreclosure sale of the property was held at which the bank purchased the property. The property was subsequently sold and the sales price credited against the loan balance. On January 30, 1975, the proceeds of the cashiers' checks held by the bank were applied against the outstanding loan and the remaining balance charged off as bad-debt loss. After demand was made by plaintiffs for return of their funds, suit was filed against the bank alleging conversion and conspiracy with Don Bodin.

Appellant's points of error one through five complain of the submission of the case to the jury on the theory of conversion for the reason that the bank was under no obligation to return specific, unique money;

that the definition of conversion given the jury was erroneous; that the finding of conversion was supported by no evidence and insufficient evidence; and that exemplary damages were not recoverable. The basis of appellant's argument is that money cannot be a proper subject for conversion unless there is an obligation to return specific money, and because the bank's liability to plaintiffs could be satisfied by repayment of equivalent sums, the subject matter of this suit was not specific money. We disagree.

An action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money. The general rule is that trover lies for the conversion of money only when there is an obligation resting on the defendant not to convert to his own use specific coin or notes. *Marston v. Hill*, 32 S.W.2d 520 (Tex.Civ.App.—El Paso 1930, no writ). An action for conversion must be supported by title in the plaintiff and there must be a means of identification of it as a specific chattel for it to constitute the subject of conversion. A suit for conversion will not lie where a debtor-creditor relationship is created by deposit of a check to the depositor's account, because when deposited the money becomes the property of the bank. The making and acceptance of an ordinary deposit creates, as between the bank and the depositor, the relation of debtor and creditor, the title to the money passing to the bank. *Smith v. Burns*, 107 S.W.2d 397 (Tex.Civ.App.—Eastland 1937, no writ). An action for conversion will not lie for money represented by a general debt. The cases distinguish between an obligation to pay money generally, or an ordinary debt, and an obligation other than that of debtor to creditor, the violation of which constitutes a conversion. 44 A.L.R.2d 927, 942 (1955).

An action for conversion of money will lie where it is delivered for safe keeping, to which the keeper claims no title and which money is required and intended to be kept segregated, substantially in the form

in which it was received or as an intact fund. *Jones v. Hunt,* 74 Tex. 657, 12 S.W. 832 (1889). Also money which is deposited in a bank under a special deposit agreement having the characteristics of a bailment contract may be the subject of a conversion action, as can money which constitutes a trust when, with knowledge of its character, it is applied by the bank in which it is held in trust to reduce the debt of the depositor to the bank. 44 A.L.R. 927, 941 (1955).

 Although the testimony is conflicting as to the instructions given to Pulley regarding disposition of the checks, the testimony of Walker, Meinhard and Biber, and Pulley's treatment of the checks suggest a safe-keeping role on the part of the bank. Clearly no debtor-creditor relationships could have been created by deposit of the checks which would preclude an action for conversion, because there was no account into which they could be deposited. The bank had no authority to collect the checks and reissue the proceeds as cashiers' checks because there was no French Oaks entity in existence or account established for same at the time the cashiers' checks were issued. The proceeds of plaintiffs' checks were capable of description, identification, or segregation in the manner that a specific chattel can be and there was sufficient evidence for the jury to find that the bank was under an obligation to treat those proceeds in a specific manner. By applying the proceeds of the cashiers' checks against the loan balance of Urbane, the bank converted the funds to their use. By disbursing Walker's 10% commission to him out of plaintiffs' personal checks, the bank wrongfully exercised dominion over the proceeds inconsistent with the rights of the owner. We find there is sufficient evidence in the record to support the jury's finding of conversion of the proceeds of plaintiff's checks, 10% of each on the dates of issuance to Walker of his commission checks and the remaining 90% on the date the cashiers' checks were applied to the loan balance.

 Appellant contends the award of exemplary damages to be erroneous for the reason that the banks' actions, at most, constitute a breach of contract for which exemplary damages are not recoverable. Because we have affirmed the finding of conversion by the bank, exemplary damages are recoverable. Exemplary damages may be awarded where conversion is accompanied by fraud, malice or gross negligence. *Lyon v. Wood,* 363 S.W.2d 179 (Tex.Civ. App.—Dallas 1962, no writ).

 Points twelve and thirteen of appellant's brief assert there was no evidence or insufficient evidence to support the jury finding of malice. We disagree. There is sufficient evidence in the record which supports a finding that the bank's actions constituted an entire want of care to raise the belief that the acts complained of were the result of conscious indifference to the rights of plaintiffs as would support an award of exemplary damages. *City National Bank in Wichita Falls v. Kiel,* 348 S.W.2d 260 (Tex. Civ.App.—Fort Worth 1961, writ ref'd n.r. e.).

Appellant complains of the definition of "conversion" given by the court in that it failed to include "the obligation to return specific money". The definition given reads:

"The terms, 'converted' and 'converting', as used in this charge, mean the unlawful exercise of dominion, ownership or control by one party over the property of another to the exclusion of the exercise of the same rights by the owner, either permanently or for an indefinite time. Money is a subject of conversion only when it can be described specifically, as opposed to discharging a debt by payment of money generally."

 Tex.R.Civ.Pro. 277 requires that definitions and explanatory instructions of legal terms be given as shall be necessary to enable the jury to properly pass on and render a verdict on the issues in the case. *Roberts v. Bush,* 352 S.W.2d 337 (Tex.Civ. App.—Amarillo 1962, writ ref'd n.r.e.). The sufficiency of the explanations and definitions as to form is largely within the discretion of the trial court, the test being the

reasonable clearness of the definitions to enable the jurors to understand the words or phrases. *Gulf Ins. Co. v. Vela*, 361 S.W.2d 904 (Tex.Civ.App.—Austin 1962, writ ref'd n.r.e.). In this regard the trial court has considerably more discretion in submitting explanatory instructions than it has in submitting special issues. *First State Bank & Trust Co. of Edinburg v. George*, 519 S.W.2d 198 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). The instruction given fairly defined the term and adequately made clear and understandable the issues it accompanied.

Appellant's sixth point complains that the definition of "limited partnership" submitted by the court was erroneous and constituted a comment on the weight of the evidence, raising objections other than those raised in the trial court. The objections not being preserved for review may not now be presented for the first time. *Texas Employers' Insurance Assn. v. Neuman*, 379 S.W.2d 295 (Tex.1964).

Appellant's point seven complains of the court's exclusion from evidence of Mrs. Meinhard's copy of the partnership tax return of French Oaks prepared for 1973 but never filed. Her testimony was that her son-in-law received the copy in 1978 as a result of his investigation of French Oaks made at her request. We agree that the tax return was properly excluded as hearsay. Writings prepared by persons not before the court to identify them are hearsay. *Trans-Cold Express, Inc. v. Hardin*, 415 S.W.2d 431 (Tex.Civ.App.—Austin 1967, no writ).

Appellant's points eight through eleven attack the sufficiency of the evidence supporting the jury's findings of actual damages. It appears that the jury included in its findings as actual damages the full amount of each of the plaintiffs' personal checks plus prejudgment interest at the rate of six percent per annum for exactly six years. In a conversion case, prejudgment interest is recoverable from the date of the conversion when supported by the pleadings and proof. *Eisemann v.*

*Emmons*, 399 S.W.2d 428 (Tex.Civ.App.—Eastland 1965, no writ).

Since we have held that as to 90% of the proceeds of each of the plaintiff's checks, the conversion did not occur until January 30, 1975, a portion of each of the actual damage findings of the jury are excessive and unsupported by any evidence. There is no evidence in the record supporting any award of any amount of actual damages in addition to the amount of each of the plaintiffs' checks plus allowable interest.

We calculate the proper amount of actual damages including prejudgment interest from the dates of conversion to the date of judgment to be $26,315.91 for Meinhard and $31,594.31 for Biber. Accordingly appellees are given fifteen days from the date of this judgment to file a remittitur of $1,119.90 of the damages awarded to Meinhard and $1,328.71 of the damages awarded to Biber. If they do so within that period of time, the judgment will be affirmed, as modified; otherwise, the judgment will be reversed and remanded pursuant to Tex.R.Civ.P. 440. *Lyon v. Wood, supra* at 183.

The judgment of the trial court is modified and as modified is affirmed.

## SUPPLEMENTAL OPINION ON FILING OF REMITTITUR

On February 11, 1981, we indicated by an opinion in writing that if appellee Marimon C. Meinhard would file a remittitur of $1,119.90 and appellee Stanley H. Biber would file a remittitur of $1,328.71, both within fifteen days, the judgment of the trial court would be modified and as modified would be affirmed; and that otherwise the judgment of the trial court would be reversed and the cause remanded. Appellees Meinhard and Biber have filed the suggested remittiturs.

Accordingly, as of this date the judgment of the trial court is modified by deducting the amount of $1,119.90 from the judgment recovered by appellee Meinhard, and by deducting the amount of $1,328.71 from the judgment recovered by appellee Biber, and, as so modified, is affirmed.